**Zoran ZECEVIC, Appellant,**

v.

**UNITED STATES PAROLE COMMISSION,**
**Appellee.**

**Docket No. 98–4061.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 17, 1998.

Decided Dec. 24, 1998.

---

732

Darrell B. Fields, The Legal Aid Society Federal Defender Division Appeals Bureau, New York, N.Y., for Appellant

Sangita K. Rao, United States Department of Justice (Michael Stover, General Counsel, United States Parole Commission, Washington, D.C., and Rockney Chickinell, Deputy General Counsel, United States Parole Commission, of Counsel), for Appellee

Before: CABRANES and POOLER, Circuit Judges, and TRAGER [1], District Judge.

1. The Honorable David G. Trager of the United States District Court for the Eastern District of New York, sitting by designation.

## BACKGROUND

POOLER, Circuit Judge:

Appellant Zoran Zecevic is a naturalized American citizen who first came to the United States in 1970 at the age of fourteen. For the majority of his adult life, Zecevic supported himself as the co-owner of a restaurant. By all accounts, his life in this country was generally law-abiding and unremarkable.

In 1992, Zecevic and his wife moved to Yugoslavia where, in the summer of 1993, a mutual friend introduced Zecevic to Boris Radjenovic. Over the next several months, Zecevic attempted to make drug contacts in Sweden through Radjenovic. In addition, Zecevic asked Radjenovic to carry a package with him on a trip to Goteborg, Sweden. Although Zecevic told Radjenovic that the package contained "yellow," which Radjenovic understood to mean gold, Zecevic later admitted to him that the package contained heroin. Once Radjenovic arrived in Sweden with the drugs, Zecevic found a buyer and arranged for their delivery. Police apprehended Zecevic and Radjenovic as the two men were on their way to meet the buyer and seized the packages in their possession, which contained 996 grams of heroin.

Zecevic was charged and convicted on counts of Aggravated Smuggling and Aggravated Drug Offense, and he was sentenced on December 28, 1993, in Goteborg City Court, Goteborg, Sweden, to a nine-year prison term. Assuming credits for good conduct, Swedish authorities calculated Zecevic's earliest possible conditional release date to be May 22, 1998. On December 29, 1995, Zecevic applied to the Swedish National Prison and Probation Administration for permission to serve the term of his Swedish sentence in the United States, pursuant to the Council of Europe's Convention on the Transfer of Sentenced Prisoners. *See* Council of Europe's Convention on the Transfer of Sentenced Prisoners, Mar. 21, 1983, T.I.A.S. No. 10824, 1985 WL 303195. On April 17, 1997, Zecevic arrived in the United States to serve out the remainder of his Swedish prison term. On November 24, 1997, a United States Parole Commission Examiner held a hearing to determine Zecevic's release date pursuant to 18 U.S.C. § 4106A(b)(1)(A).[2]

Following the hearing, the Examiner found that (1) Zecevic's foreign offense was most similar to Importing a Controlled Substance; (2) the total offense level was 30; (3) the Guideline range was 97 to 121 months; and (4) a period of supervised release of 3 to 5 years was applicable. At the sentencing hearing, Zecevic argued that he should be granted a downward departure from the Guidelines range because his offense conduct constituted a single act of aberrant behavior. In support of his motion for a downward departure, Zecevic argued that he had a background of lawful behavior and gainful employment in the restaurant industry in the United States and that his unlawful conduct was "significantly out of character given [his] long and extremely law abiding history." The hearing examiner rejected Zecevic's argument that the facts of this case warranted a downward departure on the basis of aberrant behavior, concluding that "[b]ased on information in the Post Sentence [sic] Report it is clear that this act was not spontaneous and that the subject was actively involved in the planning to smuggle the drugs out of the country." The Commission converted Zecevic's Swedish sentence under the United States Sentencing Guidelines ("Guidelines") to a 94–month prison term,[3] yielding a release date of September 21, 2001, followed by 14 months of supervised release. Zecevic now appeals his sentence pursuant to 18 U.S.C. § 4106A(b)(2)(A).

## DISCUSSION

The sole issue presented by this appeal is what standard should be used in

---

2. "The United States Parole Commission shall, without unnecessary delay, determine a release date and a period and conditions of supervised release for an offender transferred to the United States to serve a sentence of imprisonment, as though the offender were convicted in a United States district court of a similar offense." 18 U.S.C. § 4106A(b)(1)(A).

3. Pursuant to 18 U.S.C. 4106A(b)(1)(C), the combined period of time that a transferee serves in prison and on supervised release cannot exceed the length of the foreign sentence, which in this case was 108 months. For this reason, the hearing examiner recommended a term of imprisonment of 94 months, followed by a 14–month period of supervised release, despite the Guideline range of 97 to 121 months.

applying the "aberrant behavior" downward departure. Zecevic argues that the Parole Commission should have defined aberrant behavior using a "totality of the circumstances" test to determine whether his criminal conduct was aberrant in the context of his usual behavior. The Parole Commission argues that it properly defined aberrant behavior as a "spontaneous and seemingly thoughtless act rather than one which was the result of substantial planning."

■ A sentencing tribunal's refusal to depart downwardly from the Sentencing Guidelines is not appealable unless a sentence is imposed in violation of law or through a misapplication of the Guidelines. *See United States v. Lawal*, 17 F.3d 560, 562 (2d Cir.1994). Where the question concerns the legal standard to be applied in the application of the Guidelines, this Court has jurisdiction to review the sentence. *See United States v. Grandmaison*, 77 F.3d 555, 560 (1st Cir.1996) ("[i]f it appears that a misapprehension of the applicable guideline or miscalculation of the authority to deviate from the guideline range prevented the court from departing downward, appellate review is appropriate") (citations omitted). We review *de novo* the legal question of the proper standard by which to assess "aberrant behavior" under the Guidelines. *See id.* at 561; *see also U.S. v. Haynes*, 985 F.2d 65, 68 (2d Cir.1993) (legal question pertaining to appropriate ground for departure reviewed *de novo* ).

■ A sentencing court[4] "may depart downward from the guidelines only if it finds that there exist mitigating circumstances of a kind, *or to a degree,* not adequately taken into consideration by the sentencing commission in formulating the guidelines." *United States v. Pena*, 930 F.2d 1486, 1494–95 (10th Cir.1991) (citing 18 U.S.C. § 3553(b) (1988); U.S.S.G. § 5K2.0 p.s. (1988)). In this vein, the Guidelines refer to "single acts of aberrant behavior that still may justify probation at higher offense levels through departures." U.S.S.G. Ch. 1, Pt. A, 4(d). The Second Circuit has suggested that a single act of aberrant behavior may justify downward departure. *See United States v. Ritchey*, 949 F.2d 61, 63 (2d Cir.1991) (citing *United States v. Dickey*, 924 F.2d 836, 838 (9th Cir.1991)) (quoting U.S.S.G. Ch. 1, Pt. A, 4(d)). However, the Court has not yet defined the meaning of a "single aberrant act." *See United States v. Altman*, 48 F.3d 96, 105 (2d Cir.1995).

The circuit courts that have addressed this question have adopted one of two approaches. Some have concluded that "a single act of aberrant behavior ... generally contemplates a spontaneous and seemingly thoughtless act rather than one which was the result of substantial planning." *United States v. Carey*, 895 F.2d 318, 325 (7th Cir. 1990); *see also United States v. Marcello*, 13 F.3d 752, 761 (3d Cir.1994) (quoting *Carey*, 895 F.2d at 325); *United States v. Winters*, 105 F.3d 200, 207 (5th Cir.1997); *United States v. Dyce*, 91 F.3d 1462, 1470 (D.C.Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 533, 136 L.Ed.2d 418 (1996); *United States v. Withrow*, 85 F.3d 527, 531 (11th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 332, 136 L.Ed.2d 245 (1996); *United States v. Garlich*, 951 F.2d 161, 164 (8th Cir.1991); *United States v. Glick*, 946 F.2d 335, 338 (4th Cir. 1991). Using this definition of aberrant behavior, courts have focused on the amount of planning, the number of actions involved, and the length of time that goes into the defendant's criminal conduct. *See Winters*, 105 F.3d at 207; *Glick*, 946 F.2d at 338.

By contrast, the First, Ninth, and Tenth Circuits have employed a "totality of the circumstances" test in determining whether a particular defendant's conduct constitutes aberrant behavior. *See, e.g., Grandmaison*, 77 F.3d at 563; *United States v. Takai*, 941 F.2d 738, 743–44 (9th Cir.1991); *United States v. Pena*, 930 F.2d at 1494–95. Under the totality test, the degree of spontaneity and amount of planning inherent in the defendant's actions are not dispositive but merely are among the several factors courts consider in determining whether the defendant's conduct may properly be termed aberrant behavior. *See Grandmaison*, 77 F.3d at 563 ("[s]pontaneity and thoughtlessness may also be among the factors considered, though

---

4. Although this case involves a sentence imposed by the Parole Commission and not a district court, for ease of reference we refer to the sentencing body as the "court."

they are not prerequisites for departure"). Among the other factors courts have considered as part of the totality test are (1) the singular nature of the criminal act; (2) the defendant's criminal record; (3) psychological disorders from which the defendant was suffering at the time of the offense; (4) extreme pressures under which the defendant was operating, including the pressure of losing his job; (5) letters from friends and family expressing shock at the defendant's behavior; and (6) the defendant's motivations for committing the crime. *See United States v. Colace,* 126 F.3d 1229, 1231 n. 2 (9th Cir.1997) (citing *United States v. Fairless,* 975 F.2d 664, 668 (9th Cir.1992)); *Takai,* 941 F.2d at 743–44.

■ Courts adopting the totality test have also considered mitigating factors such as the level of pecuniary gain the defendant derives from the offense; the defendant's charitable activities and prior good deeds; and his efforts to mitigate the effects of the crime, *see Grandmaison,* 77 F.3d at 563 (citing *Takai,* 941 F.2d at 741), as well as the defendant's employment history and economic support of his family, *see Pena,* 930 F.2d at 1495. Whereas the courts applying the spontaneity test define aberrant behavior with reference to the particular crime committed, those employing the totality test look at the criminal conduct in the context of the defendant's day-to-day life. Under the totality test, "when all is said and done, the conduct in question must truly be a short-lived departure from an otherwise law-abiding life." *Colace,* 126 F.3d at 1231.

■ The Commission argues that the totality test would make an aberrant behavior departure available to anyone with no prior criminal record. We disagree. The totality standard is not a blanket rule that anyone without a criminal record will automatically be entitled to a downward departure because an absence of criminal convictions is but one of several factors a court must consider. *See Grandmaison,* 77 F.3d at 563–64 ("[t]he totality of the circumstances test, though admittedly broader than the spontaneity test ..., is consistent with the Commission's intention to limit applications of the aberrant behavior principle.... [A]berrant behavior and first offense are not synonymous") (internal quotation and citations omitted). In-

deed, our decision in this case disproves the Commission's argument because, although Zecevic is a first-time offender, we conclude he is not entitled to a downward departure for aberrant behavior under the totality test.

On the other hand, the majority rule requirement of a spontaneous and thoughtless act is so difficult to satisfy that it rarely, if ever, could result in a downward departure for aberrant behavior. The classic and frequently cited example of aberrant behavior is that of *United States v. Russell,* 870 F.2d 18 (1st Cir.1989). Russell, the driver of a Wells Fargo armored truck, had an extra $80,000 delivered to his truck through a bank error. *See id.* at 19. Russell and his partner initially yielded to temptation and kept the money, but a week later they returned it to the bank and cooperated fully with the authorities. *See id.* Given the manner in which courts have applied the narrow "spontaneous and thoughtless" definition of aberrant behavior, it is difficult to see how anything short of the fortuitous and spontaneous events present in *Russell* could ever fall within that definition. Indeed, the Eleventh Circuit concluded in *Withrow* that driving around a parking lot looking for a car to steal constituted sufficient planning and preparation to bar classification of the defendants' acts as aberrant because "[d]uring the time it took Withrow to locate a desirable vehicle to rob, he had an opportunity either to reflect upon the action he was about to take and withdraw or to devise a plan to commit the car theft." *Withrow,* 85 F.3d at 531. If actions taking place over such a short period can be deemed to include sufficient planning and preparation to remove them from the realm of the "spontaneous and thoughtless," this standard is limited indeed.

■ We adopt the view espoused by the First, Ninth, and Tenth Circuits that aberrant behavior is conduct which constitutes "a short-lived departure from an otherwise law-abiding life," and that the best test by which to judge whether conduct is truly aberrant is the totality test. That test "achieves the balance between uniformity in sentencing and district court discretion the Guidelines were intended to strike." *Grandmaison,* 77 F.3d at 563. We agree with the circuits

adopting the totality of the circumstances test that "[a]ny other reading would produce an absurd result. District courts would be reduced to counting the number of acts involved in the commission of a crime to determine whether departure is warranted. Moreover, the practical effect of such an interpretation would be to make aberrant behavior departures virtually unavailable to most defendants because almost every crime involves a series of criminal acts." *Id.* In assessing a defendant's behavior, courts may consider factors such as (1) the singular nature of the criminal act; (2) the defendant's criminal record; (3) the degree of spontaneity and planning inherent in the conduct; (4) extreme pressures acting on the defendant, including any psychological disorders from which he may have been suffering, at the time of the offense; (5) the defendant's motivations for committing the crime, including any pecuniary gain he derived therefrom; and (6) his efforts to mitigate the effects of the crime. This list is not exclusive, and no one factor shall be dispositive.

■ Having enunciated the standard by which to assess aberrant behavior, we now turn to the application of this standard to the facts of this case. Ordinarily, after articulating a new standard, we would remand to the Parole Commission for re-sentencing and further findings in light of the new standard. However, an appellate court need not remand every time a sentencing court misapplies a provision of the Guidelines; rather, remand is required only if the sentence was imposed "as a result of" an incorrect application of the Guidelines and "the sentence would have been different but for the district court's error." *See Williams v. United States,* 503 U.S. 193, 202–03, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992). *See also Koon v. United States,* 518 U.S. 81, 84, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (remand is unnecessary where the error in sentencing is harmless); *United States v. Johnson,* 964 F.2d 124, 130–31 (2d Cir.1992) (concluding that remand was unnecessary where the district court would have imposed the same sentence had it not misapplied the Guidelines and relied upon an impermissible factor). We have carefully reviewed the record and conclude that a remand is not required in this case.

■ Here, the Parole Commission's use of the spontaneity test rather than the totality test did not affect the sentence it imposed. Zecevic's counsel argued at the parole hearing for a downward departure based on aberrant behavior and developed a factual record in support of his motion. The record, including the hearing transcript and the Postsentence Investigation Report, contains sufficient evidence bearing on the factors relevant to a totality of the circumstances analysis. Zecevic's lawyer pointed to his client's "long and extremely law abiding history," his "very lengthy ... background of lawful employment in the restaurant business," and the fact that he had "lived nearly forty years without ever being involved in anything criminal." Counsel noted that in the context of Zecevic's life, his conduct in committing the offense was "decidedly out of character." The record also contains statements by Zecevic's mother reflecting her "complete shock" regarding his arrest because he never presented any disciplinary problems as a child and, to her knowledge, never had any prior involvement with the law or any history of drug use or narcotics trafficking. Zecevic's attorney further argued that Zecevic "made a tremendous sacrifice" in returning to the United States to be near his ailing mother, thereby losing the benefits of Sweden's early release policy. However, Zecevic's choice in this regard has no bearing on whether his criminal conduct was aberrational. The evidence indicates that Zecevic initiated an elaborate scheme to smuggle drugs into Sweden and carried out that plan over the course of several months. Although he had the opportunity to and did present other evidence bearing on the totality standard, Zecevic presented no evidence to suggest he was suffering from any disorders or operating under any extreme pressures at the time he committed the offense, nor did he demonstrate any particular motive other than pecuniary gain. He did not claim that he had made efforts to mitigate the effects of the crime. Apart from his status as a first offender and the support of his mother, Zecevic has little else to recommend him for an aberrant behavior departure. We therefore conclude, on the record as a whole, that the Parole Commission would have imposed the

same sentence under the totality of the circumstances test as it did under the spontaneity test. To do otherwise on this record would have constituted an abuse of discretion.

In sum, the hearing examiner allowed Zecevic to develop a full record in support of his motion for a downward departure for aberrant behavior. Although we hold today that the Parole Commission should have used a totality of the circumstances test in assessing whether Zecevic's conduct was aberrant behavior, we conclude that had the Commission granted Zecevic's request for a downward departure for aberrant behavior on the record before it, its decision would have constituted an abuse of discretion, even under the totality standard. We therefore affirm Zecevic's sentence.

Affirmed.