UNITED STATES of America,
Appellant,

v.

Jose Alfredo MARTINEZ,
Defendant–Appellee,

Leonel Martinez, Orsi Tineo, also known as Cristobal Del Valle, and Francisco Valdez, Defendants.

No. 99–1285.

United States Court of Appeals,
Second Circuit.

Argued: Jan. 13, 2000.

Decided: March 21, 2000.

David C. Esseks, Assistant United States Attorney, New York, N.Y. (Mary Jo White, United States Attorney for the Southern District of New York, Christine H. Chung, Assistant United States Attorney, New York, N.Y., of counsel), for Appellant United States of America.

Joseph A. Bondy, New York, N.Y., for Defendant–Appellee Jose Alfredo Martinez.

Before: WINTER, Chief Judge, JACOBS and KATZMANN, Circuit Judges.

KATZMANN, Circuit Judge:

The government appeals the May 3, 1999 judgment of the United States District Court for the Southern District of New York (Harold Baer, Jr., *Judge*), resentencing defendant-appellee Jose Alfredo Martinez ("Martinez") to 94 months'

incarceration,[1] following remand by another panel of this Court. The government contends that the district court erred in departing from the sentencing range otherwise applicable under the United States Sentencing Guidelines ("Guidelines") based on Martinez's alleged aberrant behavior. We agree and therefore vacate and remand for resentencing.

## BACKGROUND

Following a three-day jury trial in October 1997, defendant Martinez was convicted of one count of conspiracy to distribute cocaine and one count of attempted possession of cocaine with intent to distribute, both in violation of 21 U.S.C. § 846 (1994 & Supp.1999). Both counts related to a conspiracy to smuggle 100 kilograms of cocaine from the Dominican Republic to Manhattan, with intent to distribute the cocaine in New York City. Martinez's participation in this conspiracy included the packaging and concealed transport of the cocaine into the United States in cans of guava paste. Law enforcement officers found the cocaine in a shipping container holding the cans of guava paste in Port Elizabeth, New Jersey, and on March 20, 1997, arrested Martinez and his three codefendants in New York City. Martinez testified in his own defense at trial, contending that the shipment of guava paste was part of a legitimate business venture, and denying any knowledge that the shipment contained cocaine. Martinez also denied that he had ever confessed his involvement in this cocaine shipment to any law enforcement officer. The government responded by introducing Martinez's post-arrest statement, in which Martinez admitted to participating in the shipment at issue and further stated that one of his co-conspirators had another 2,000 kilograms of cocaine hidden in the Dominican Republic waiting to be shipped.

Martinez moved for downward departures on four distinct grounds at his initial sentencing in June 1998: extraordinary family circumstances, extraordinary medical condition, willingness to consent to deportation and aberrant behavior. At this sentencing, Martinez continued to profess his innocence with respect to the crimes for which he was convicted. The district court declined to depart from the Guidelines on any of the grounds raised by Martinez, either separately or in combination. At the time of Martinez's initial sentencing, this Circuit had not adopted a standard for assessing downward departures based on aberrant behavior. The district court noted that this Circuit had yet to speak to this issue and held that an aberrant act justifying departure is not simply one which is out of character but one that is spontaneous and thoughtless, applying the rule espoused by a majority of the circuits. *See United States v. Winters*, 105 F.3d 200, 206–07 (5th Cir.1997); *United States v. Dyce*, 91 F.3d 1462, 1470 (D.C.Cir.1996); *United States v. Withrow*, 85 F.3d 527, 530–31 (11th Cir.1996); *United States v. Marcello*, 13 F.3d 752, 761 (3d Cir.1994); *United States v. Garlich*, 951 F.2d 161, 164 (8th Cir.1991); *United States v. Glick*, 946 F.2d 335, 338 (4th Cir.1991); *United States v. Carey*, 895 F.2d 318, 325 (7th Cir.1990). The district court noted, however, that it "would in fact feel differently about it and have to consider [the issue] carefully" if a different rule-the totality of circumstances test-adopted by a minority of circuits had been controlling. *See United States v. Grandmaison*, 77 F.3d 555, 563 (1st Cir.1996); *United States v. Takai*, 941 F.2d 738, 743 (9th Cir.1991); *United States v. Pena*, 930 F.2d 1486, 1495 (10th Cir.1991). Accordingly, Martinez was sentenced to a prison term of 188 months.

Martinez appealed both his conviction and his sentence. With respect to his

---

**1.** The district court also imposed 5 years of supervised release and a $200 special assess-ment.

underlying conviction, Martinez's arguments included the claim that the district court improperly admitted testimony regarding prior uncharged drug shipments in which Martinez was allegedly involved, and that he received ineffective assistance of counsel, as trial counsel permitted his post-arrest confession regarding the 2,000 kilograms of cocaine to be admitted into evidence. With respect to his sentence, Martinez urged the panel to adopt the totality of circumstances test and remand for resentencing. While Martinez's initial appeal was pending, this Circuit adopted the totality of circumstances test in *Zecevic v. United States Parole Commission*, 163 F.3d 731, 735–36 (2d Cir.1998). In an unpublished opinion issued in February 1999, another panel of this Court affirmed Martinez's conviction, but vacated the sentence and remanded for "reconsideration . . . in light of *Zecevic*."

Martinez's resentencing was held pursuant to this narrow mandate in April 1999. Martinez again moved for a downward departure based on aberrant behavior and for the first time moved for a downward departure based on his alleged post-conviction rehabilitation and relief from the statutory minimum sentence applicable to his offenses, *see* 18 U.S.C. § 3553(f); U.S. Sentencing Guidelines Manual §§ 2D1.1(b)(6), 5C1.2 (1998) ("U.S.S.G."). The government did not oppose the latter motion-the motion for "safety valve" relief-once Martinez had satisfied the requirement of the applicable statutory and Guidelines provisions that he disclose all information relating to his offenses that were part of the same course of conduct or a common scheme or plan. *See id.* In so doing, Martinez admitted that he had been involved in importing cocaine from the Dominican Republic to New York on two other occasions, the first involving a shipment of four or five kilograms of cocaine and the second, in February 1996, a shipment of ten kilograms. The government therefore conceded that Martinez should be granted a two-level downward departure based on the "safety valve," bringing his Guidelines range from 188–235 months' to 151–188 months' imprisonment.

The government argued, however, that Martinez was not entitled to any further downward departures because his admitted participation in two other cocaine shipments "obliterate[d] . . . any claim he can have under *Zecevic* to an aberrant conduct departure," and because the totality of circumstances test precluded such departure, as applied to the facts before the district court. Nevertheless, the district .court granted the aberrant behavior downward departure and sentenced Martinez to "half of the sentence that would originally have been appropriate," that is, 94 months in prison. The district court made reference to a number of different factors in reaching this decision, including Martinez's status as a "first time offender" and as an upstanding member of his community, his family circumstances, his charitable and volunteer activities, the severe financial pressures that he had been under, his rehabilitative efforts, and his medical condition as a type II diabetic.

The government now appeals the downward departure for aberrant behavior, contending that such departure was not warranted under *Zecevic*. We agree.

## DISCUSSION

"We review a district court's decision to depart from the applicable Guidelines range for abuse of discretion and give due deference to the district court's institutional advantage over an appellate court in comparing one sentencing case to another." *United States v. Faria*, 161 F.3d 761, 762 (2d Cir.1998) (*per curiam*) (citing *Koon v. United States*, 518 U.S. 81, 98–99, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)). While the district court enjoys discretion with respect to a decision to depart from the Guidelines, this "does not mean that appellate review is an empty exercise." *Koon*, 518 U.S. at 98, 116 S.Ct. 2035. A departure is only warranted where a case is unusual enough for it to "fall outside the

heartland of cases in the Guideline[s]." *Id.* at 98, 116 S.Ct. 2035. No departure from the Guidelines is appropriate unless

> there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)) (internal quotation marks omitted).

■ The government's appeal is limited to the district court's application of *Zecevic.* The *Zecevic* court recognized that the Guidelines refer to "single acts of aberrant behavior that still may justify probation at higher offense levels through departures," U.S.S.G. Ch. 1, Pt. A, 4(d), and joined the First, Ninth and Tenth Circuits in adopting the totality of circumstances test for assessing departures based on such behavior, *see Zecevic,* 163 F.3d at 734–36 (citing cases). Holding that "single acts of aberrant behavior" should be assessed "in the context of the defendant's day-to-day life" rather than solely "with reference to the particular crime committed," *id.* at 735, the court stated that the factors district courts may consider in assessing such behavior include:

> (1) the singular nature of the criminal act; (2) the defendant's criminal record; (3) the degree of spontaneity and planning inherent in the conduct; (4) extreme pressures acting on the defendant, including any psychological disorders from which he may have been suffering, at the time of the offense; (5)

the defendant's motivations for committing the crime, including any pecuniary gain he derived therefrom; and (6) his efforts to mitigate the effects of the crime.

*Id.* at 736. Not only is this list non-exclusive, but "no one factor shall be dispositive." *Id.*

■ Even according due deference to the district court's decision, application and balancing of the *Zecevic* factors to the circumstances of this case reveals that Martinez is not entitled to a downward departure for aberrant behavior. While Martinez's lack of a prior criminal record is a valid consideration, "aberrant behavior and first offense are not synonymous," *id.* at 735 (internal quotation marks and citation omitted), and none of the other *Zecevic* factors are unequivocally in his favor. First, the three occasions on which Martinez participated in a cocaine importation scheme or schemes, spanning at least 13 months from before February 1996 to March 1997, amount to a pattern of knowing, planned and deliberate activity that can hardly be described as spontaneous. Martinez and the government dispute the singular nature of this cocaine importation activity, with Martinez referring to a "unitary importation scheme" and the government arguing that the three separate acts of importation cannot be considered aberrant.[2] Whether or not the activity in question constitutes "*a* short-lived departure from an otherwise law-abiding life," *id.* (internal quotation marks and citation omitted) (emphasis added), it certainly does not constitute a *short-lived* departure. The prolonged, calculated and even sys-

**2.** There is a definitional problem here, as even a "single act" of drug importation involves numerous discrete "acts" leading up to the packaging, concealment and the shipment of the cocaine. *See United States v. Grandmaison,* 77 F.3d 555, 563 (1st Cir.1996) (recognizing that "multiple acts leading up to the commission of a single crime" need not automatically bar an aberrant behavior departure). Martinez could, *arguendo,* have been participating in but one overarching

scheme to import approximately 115 kilograms of cocaine. Given that Martinez admitted to the prior importation activity only at his resentencing, the factual record below on this issue is understandably sparse. Therefore, it would be inappropriate to decide on the proper definition of "singular nature," *Zecevic,* 163 F.3d at 735, or the "singular nature" of Martinez's activity here. The vacatur of Martinez's sentence does not depend on the resolution of this issue.

tematic nature of Martinez's activity, combined with the paucity of other factors militating in his favor, leads us to conclude that his actions cannot be characterized as "aberrant."

 Second, the district court improperly relied on Martinez's claim that he was under pressure and motivated by the desire to pay the workers at his factory as factors in favor of granting the downward departure. The Guidelines suggest in a different context that financial and economic duress may not be considered in reducing a criminal sentence. *Cf.* U.S.S.G. § 5K2.12 ("The Commission considered the relevance of economic hardship and determined that personal financial difficulties and economic pressures upon a trade or business do not warrant a decrease in sentence."); *United States v. Payton,* 159 F.3d 49, 60 (2d Cir.1998) (recognizing that § 5K2.12 prohibits consideration of economic hardship). Martinez admitted that he stood to make $30,000 from the 100 kilogram shipment, and the fact that his motive was pecuniary generally tends to militate *against* leniency with respect to his sentence, as the district court recognized at Martinez's initial sentencing. *See Zecevic,* 163 F.3d at 736–37 (noting that defendant was not suffering from any psychological disorders and had no motive other than pecuniary gain); *see also United States v. Green,* 105 F.3d 1321, 1323 (9th Cir.1997) (reversing grant of downward departure because, *inter alia,* defendant proffered no rationale for his marijuana operation other than pecuniary gain). Further, for "extreme pressures," *Zecevic,* 163 F.3d at 736, to militate in favor of a downward departure under the totality of circumstances test, the pressures involved must be more than purely economic, unless the economic hardship is extreme or accompanied by other "pressures," such as psychological disorder. *See, e.g., United States v. Fairless,* 975 F.2d 664, 667–69 (9th Cir.1992) (stating that defendant's manic depression and recent job loss were part of "convergence of factors" justifying

aberrant behavior departure); *United States v. DeRoover,* 36 F.Supp.2d 531, 532–33 (E.D.N.Y.1999) (stating that single mother's history of abuse, family suicide, need to provide for her five children and "temporary and extreme family stress," "independently and together," weighed in favor of downward departure). Such extreme pressures are absent in this case. The fact that Martinez may have intended to use the proceeds of his crime to save the jobs of his workers does not justify his role in cocaine importation, with all of its ruinous effects on human life.

Third, Martinez made no effort to mitigate the effects of his crime, as the district court specifically found at the initial sentencing. Moreover, at his initial sentencing Martinez continued to deny his guilt, and on his initial appeal he contested the admission at trial of evidence regarding prior and possibly future drug shipments in which he was involved. In addition, Martinez did not make a full disclosure of information pertaining to his crimes under the "safety valve" that was satisfactory to the government until his resentencing. Thus, this factor does not weigh in favor of a downward departure here.

 Finally, to the extent that the district court relied on factors not explicitly enumerated in *Zecevic,* such factors are insubstantial, and perhaps irrelevant. We review *de novo* the legal issue of whether a particular factor can be properly considered in applying the *Zecevic* totality of circumstances test. *Cf. United States v. Core,* 125 F.3d 74, 76 (2d Cir.1997) (holding that whether a particular factor is a permissible ground for departure is reviewed *de novo* ). The factors considered by the district court in this regard include Martinez's charitable and volunteer activity, his condition as a type II diabetic, his rehabilitative efforts and his family circumstances. Many these factors are addressed in distinct and unrelated bases for downward departures under the Guidelines. Whether these factors have a sufficient connection to the aberrance of Mar-

tinez's behavior or render a crime any more or less aberrant at the time that the crime takes place is highly questionable. Although *Zecevic* does set forth a fluid totality of circumstances test, this does not justify the open-ended consideration of every conceivable basis for a downward departure in applying the test. The district courts must therefore give due regard to the relevance of a factor to the aberrant nature of the defendant's behavior in exercising their sound discretion under *Zecevic*. The degree of relevance of a particular factor will depend on the specific circumstances of each case.

In any event, none of the additional factors invoked by Martinez justify a downward departure for aberrant behavior under *Zecevic* in this case. While the record does suggest that Martinez has generally been law-abiding and engaged in charitable works, these factors do not ultimately tip the balance in his favor in light of the foregoing analysis. *Cf. United States v. Rioux*, 97 F.3d 648, 663 (2d Cir. 1996) (holding that pursuant to U.S.S.G. § 5H1.11, "civic, charitable, and public service and similar prior good works are not ordinarily relevant in determining whether the defendant should receive a downward departure," such that a downward departure is only warranted in "extraordinary cases" where a combination of factors place the case outside the heartland of cases under the Guidelines (citations and internal quotation marks omitted)). There is no evidence in the record that Martinez's diabetes is of a type that cannot be adequately cared for within the prison system. *Cf. United States v. Altman*, 48 F.3d 96, 104 (2d Cir.1995) (suggesting that defendant must be seriously infirm with medical condition that cannot be adequately cared for by Bureau of Prisons to warrant downward departure for extraordinary physical impairment under U.S.S.G. § 5H1.4). Nor is there any indication of remarkable rehabilitative achievements. *Cf. United States v. Cornielle*, 171 F.3d 748, 754 (2d Cir.1999)

(holding that defendant's rehabilitative efforts must be extraordinary to justify a downward departure). Moreover, while Martinez's conviction and sentence do deprive his family of a valued member and source of financial support, his wife is a college teacher and there is no evidence that any of his family members are children, elderly adults or have conditions requiring special care. *Cf. Faria*, 161 F.3d at 762 (stating that downward departure for extraordinary family circumstances under U.S.S.G. § 5H1.6 is only warranted where "the family [is] uniquely dependent on the defendant's ability to maintain existing financial and emotional commitments.").

We therefore conclude, based on the record as a whole, that the totality of circumstances test in *Zecevic* does not justify the reduction of Martinez's sentence to 94 months' imprisonment.

## CONCLUSION

We have considered all of Martinez's other arguments and find them to be without merit. For all of the foregoing reasons, we vacate the portion of the district court's sentence granting a downward departure for aberrant behavior and remand for resentencing in light of this opinion.