Sangwoo PAK

v.

UNITED STATES of America

No. 3:02CV1432 (SRU).
No 3:99CR260 (SRU).

United States District Court,
D. Connecticut.

June 26, 2003.

Sangwoo Pak, White Deer, PA, pro se.

James K. Filan, Jr., Bridgeport, CT, for defendant.

### AMENDED RULING

UNDERHILL, District Judge.

Petitioner Sangwoo Pak, acting *pro se*, filed a motion to vacate, set aside, and correct his sentence, pursuant to 28 U.S.C. § 2255. Pak bases his motion on multiple grounds, most of which relate to the alleged ineffectiveness of his trial counsel. For the following reasons, Pak's motion is denied.

*Procedural Posture*

On July 13, 2000, Pak pleaded guilty to the interstate kidnaping of Heechul Kwon. On February 26, 2001, this court sentenced Pak to 48 months' imprisonment, three years' supervised release, and a mandatory $100 special assessment. Pak appealed this sentence to the Second Circuit on the grounds that the court erred when it denied his request for a downward departure based on aberrant conduct. Specifically, Pak argued that this court failed to apply the relevant legal standard in *Zecevic v. United States Parole Commission*, 163 F.3d 731 (2d Cir.1998), by giving dispositive weight to the factor of planning and virtually ignoring other factors weighing in Pak's favor. According to Pak, this court actually applied the "spontaneity" test rejected in *Zecevic* instead of applying *Zecevic's* "totality of the circumstances" test. *See Zecevic*, 163 F.3d at 734–36. Ultimately, the Second Circuit held that it was without jurisdiction to hear an appeal on the downward departure because "the sentencing court made no error of law." *United States v. Pak*, 29 Fed.Appx. 666, 668, 2002 WL 226399 (2d Cir.2002). Pak then filed this petition to vacate and set aside his conviction and sentence on the ground, *inter alia*, that he was disadvantaged by the ineffective assistance of counsel.

*Standard of Review*

It is well settled that collateral relief under 28 U.S.C. § 2255 is an extraordinary remedy. *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). "An error that may justify reversal on direct appeal may not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). Accordingly, section 2255 relief is available only for "constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989) (internal citations omitted). The stringency of this standard is consonant with "the profound importance of finality in criminal proceedings." *Strickland v. Washington*, 466 U.S. 668, 693–94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1983).

In considering claims that a defendant was deprived of effective assistance of counsel in preparing his case, there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. Unsupported allegations by a defendant are insufficient to rebut this strong presumption, because such allegations would erode the role of defense counsel in the criminal justice system. *Id.* Thus, to prevail on a motion supported by a claim of ineffective assistance of counsel, the defendant must show that defense counsel's performance "fell below an objective standard of reasonableness, and that he was prejudiced by counsel's deficient acts or omissions." *United States v. Guevara*, 277 F.3d 111, 127 (2d Cir.2001) (quoting *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

*Discussion*

*Procedural Bar to Habeas Review*

When this petition was first briefed, prior to the Supreme Court's April 2003 ruling in *Massaro v. United States,* —— U.S. ——, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003), the government contended that Pak was procedurally barred from raising his ineffectiveness of counsel claims in a section 2255 petition because these claims were not raised on direct appeal. Generally, the procedural bar doctrine does not apply to claims of ineffective assistance of counsel. *See Johnson v. United States,* 313 F.3d 815, 817 (2d Cir.2002). However, under *Billy–Eko v. United States,* 8 F.3d 111, 114 (2d Cir.1993), a narrow exception to this general rule existed in a minority of federal circuits, including the Second Circuit. In this narrow category of cases defined by *Billy–Eko,* the petitioner was required "to show cause for not bringing the ineffective assistance claim on direct appeal, and prejudice resulting therefrom." *Billy–Eko,* 8 F.3d at 115.

█ In April 2003, the Supreme Court specifically abrogated *Billy–Eko,* holding that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States,* —— U.S. ——, ——, 123 S.Ct. 1690, 1696, 155 L.Ed.2d 714 (2003). As *Massaro* instructs, the fact that Pak did not raise his ineffective assistance claim on direct appeal does not bar him from raising such a claim in a section 2255 petition. Accordingly, this court will now address the merits of Pak's claims.

*Review on the Merits of Pak's Claims*

1. *Ineffective Assistance of Counsel Claims*

A petitioner challenging his conviction on the basis of ineffective assistance of counsel bears the heavy burden of "demonstrat[ing] that counsel's performance 'fell below an objective standard of reasonableness.'" *United States v. Atherton,* 846 F.Supp. 170, 173 (D.Conn.1994) (quoting *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Because of the difficulties inherent in making such an evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Id.* at 689, 104 S.Ct. 2052 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83, (1955), *reh'g denied,* 350 U.S. 955, 76 S.Ct. 340, 100 L.Ed. 831 (1956)). Additionally, a petitioner must establish that counsel's error actually prejudiced his defense. *Id.* at 694, 104 S.Ct. 2052. Indeed, "[t]he benchmark of judging any claim of· ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. 2052.

Here, Pak claims that his counsel was ineffective in failing to bring more witnesses to the sentencing, in failing to argue for a continuance of sentencing proceedings in order to allow the victim to attend, in failing to object to proof of planning set forth in the presentence report, in admitting that Pak planned the crime, in failing to investigate and present evidence regarding petitioner's mental and psychological disorder at the time of sentencing, in delaying the initiation of plea discussions, in failing to object to the points Pak received for acceptance of responsibility, and in failing to argue for a

downward departure. All of these claims are without merit and have resulted in no prejudice to Pak. .

### A. Trial Counsel's Failure to Bring Additional Witnesses to Sentencing

█ Pak contends that his trial counsel erred in failing to bring more witnesses to speak on Pak's behalf at the sentencing proceeding. At sentencing, Reverend Samuel Lee, Pak's pastor, spoke on his behalf, as did Mr. Wonjun, a fellow parishioner at the Korean Central Church, and Julia Pak, Pak's sister. All three presented to the court information regarding their positive experiences with Pak and his cultural and religious upbringing. All three witnesses were extremely effective in portraying Pak as a hardworking, religious individual. Pak has presented no information suggesting that additional witnesses probably would have been effective in persuading this court to impose a lesser sentence. To the contrary, in this situation, additional witnesses would have been redundant and would have unnecessarily prolonged the sentencing proceeding. Thus, his trial counsel's decision to limit the number of witnesses to three did not cause Pak prejudice.

### B. Trial Counsel's Failure to Postpone Sentencing

█ Pak also contends that his trial counsel erred by failing to request a continuance of sentencing in order to secure the victim's testimony. Trial counsel's failure to request a continuance is not grounds for collateral relief here. Under no circumstances would the court have granted a continuance solely for the pur-

pose of allowing the victim to appear. To do so might have resulted in the victim feeling unduly pressured to attend the sentencing in order to testify on behalf of Pak. Because this court would not have granted a continuance under such circumstances, Pak has suffered no prejudice as a result of trial counsel's decision not to request a continuance.

### C. Trial Counsel's Failure to Object to Proof of Planning

█ Pak argues that his trial counsel was ineffective in failing to object to the proof of planning set forth in the presentence report ("PSR"). Pak also contends that trial counsel erred in admitting the planning aspect of the crime without Pak's consent. Both of these claims lack merit. There was ample evidence to suggest that considerable planning had been necessary for the execution of Pak's offense.[1] Indeed, the evidence of the planning aspect of the crime was so overwhelming that to object to its inclusion in the PSR would have led to a loss of credibility for trial counsel. Trial counsel's decision to be forthcoming about the planning aspect of the crime was reasonable under the circumstances. If trial counsel had denied the planning aspect of the crime, as Pak suggests he should have, Pak's factual acceptance of responsibility could have been jeopardized. It is well settled that such "[a]ctions or omission that might be considered sound trial strategy do not constitute ineffective assistance of counsel". *Kieser v. People of New York,* 56 F.3d 16, 18 (2d Cir.1995).

---

**1.** The record reflected that Pak sought information about his prospective victim; familiarized himself with the victim's neighborhood; conducted surveillance of the victim; participated in a firearm training course at the Massachusetts Institute of Technology; obtained and used a disguise, leg irons, hand cuffs, and a pistol in order to apprehend his victim; acquired and used a disguise; concocted a ruse to lure the victim to him; and loaded the weapon and lay in wait for the victim.

### D. Investigation and Presentation of Evidence Regarding Mental and Psychological Disorder

■ Pak argues that trial counsel failed to conduct a thorough investigation regarding his psychological condition, his family history of mental instability, and his cultural background. Pak presents no evidence to substantiate this claim, and instead makes conclusory assertions regarding trial counsel's alleged failings. It is well settled that "undetailed and unsubstantiated assertions that counsel failed to conduct a proper investigation have consistently been held insufficient to satisfy either *Strickland* prong." *Polanco v. United States*, 2000 WL 1072303, *10 (S.D.N.Y. Aug.3, 2000); *see also Madarikan v. United States*, 1997 WL 597085, *1 (E.D.N.Y. Sept.24, 1997).

Prior to sentencing, Pak underwent two court-ordered psychological evaluations, as well as an evaluation performed by his own psychologist. The evaluations assessed Pak's psychological and mental state with specific attention to the manner in which Pak's cultural background affected his psychological state and actions. The court was provided with all of this information prior to sentencing. Indeed, trial counsel noted at sentencing that "it's pretty well established ... that this was a feeling that perhaps was born out of his feeling of honor or pride that is somewhat cultural." Tr. Sentencing at pp. 8–9. Pak's trial counsel made reasonable efforts to inform the court of Pak's psychological state and the manner in which that state was influenced by Pak's Korean culture. Accordingly, there is no merit to Pak's unsubstantiated claims that trial counsel failed to adequately investigate and present information concerning his psychological and mental state.

### E. Failure to Initiate Plea Discussions

■ Pak contends that his trial counsel was ineffective in failing to initiate plea bargain negotiations earlier in the prosecution. Pak further contends that this alleged error resulted in his receiving a two, rather than three, point reduction for acceptance of responsibility. Pak further contends that trial counsel erred in not objecting to the two-point reduction. Pak claims that if he has been offered a plea agreement earlier in the process, he would have accepted it. Had he pled earlier, he would have been eligible for a three-point reduction for acceptance of responsibility, pursuant to section 3E1.1(b)(2) of the Sentencing Guidelines. Because plea negotiations were initiated on the morning of jury selection, Pak only received a two-point reduction, reflecting the fact that the government had been required to prepare the case for jury trial.

Under such circumstances, if Pak were able to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. 2052, he would have a viable ineffective assistance of counsel claim. Here, however, there is no reasonable probability that the sentence imposed would have been different had trial counsel initiated plea negotiations earlier. If plea discussions had been initiated earlier, and a plea agreement accepted, Pak would have received a three-point reduction for acceptance of responsibility and would have been subject to a guideline range of 41—51 months. With a two-point reduction, he was in the 46—57 months guideline range. Ultimately, this court imposed a sentence of 48 months' incarceration.

This court's determination of Pak's sentence was by no means mechanical. In-

deed, Pak's sentence was carefully considered and was intended to reflect the nature of his offense, as well as the four purposes of sentencing—punishment, incapacitation, deterrence, and rehabilitation of the defendant. Pak's sentence was not tied to the low end of the applicable guideline range. Looking at the totality of the circumstances, this court tailored Pak's sentence to fit his criminal history and the seriousness of the crime underlying his conviction. Had Pak been subject to the lower guideline range, this court still would have imposed a sentence of 48 months' incarceration in order to reflect the seriousness of the crime and Pak's circumstances. *Cf. Johnson v. United States*, 313 F.3d 815, 818 (holding that, based on the record on appeal and the court's statement that the defendant would be given the "minimum" sentence allowed, there was a reasonable probability that, but for counsel's error, the defendant would have received a different sentence).

### F. Failure to Argue for a Downward Departure

Pak also contends that his trial counsel erred in failing to argue for a downward departure based on sections 5K2.10 and 5K2.11 of the United States Sentencing Guidelines. Section 5K2.10 provides that a downward departure may be available in situations where "the victim's wrongful conduct contributed significantly to provoking the offense behavior." U.S.S.G. § 5K2.10. Section 52K.11 provides that a downward departure may be appropriate in circumstances where the "defendant may commit a crime in order to avoid a perceived greater harm." U.S.S.G. § 5K2.11. Pak argues that downward de-

partures based on these provisions would have been appropriate in his case because: (1) his offense was motivated by the victim's sexual abuse of Pak's girlfriend, and (2) his use of a firearm and an isolated location in executing the offense was intended to minimize the risk to himself and any innocent bystanders. Under either section, Pak's claims do not warrant collateral relief.

■ It is unlikely that section 5K2.10 contemplates the sort of conduct presented in this case. As a threshold matter, section 5K2.10 seems to contemplate conduct by the victim that is directed *towards the defendant*, rather than towards a third party. *See Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); *United States v. Paster*, 173 F.3d 206 (3d Cir.1999). Here, the victim's conduct was directed towards Pak's girlfriend, not towards Pak himself. Moreover, the term "provoking", as used in section 5K2.10, appears to contemplate conduct that is closer, temporally, to the defendant's offense conduct.[2] *See United States v. Paster*, 173 F.3d 206 (3d Cir. 1999). Here, the victim's wrongful conduct towards Pak's girlfriend occurred years earlier, thereby mitigating its provoking effect. Section 5K2.10 requires that, in reviewing a request for a downward departure, the court take into consideration the size and strength of the victim and other physical characteristics in comparison with that of the defendant. Such considerations suggest that section 5K2.10 is intended to address the *immediacy* of the threat or provocation posed by the victim to the defendant at or about the time of the offense conduct. A departure under section 5K2.10, therefore, might be appropriate when the defen-

---

**2.** As defined in the Random House Webster's Unabridged Dictionary (2d ed.1998), "provoke" means: 1. to anger, enrage, exasperate, or vex; 2. to stir up, arouse, or call forth (feelings, desires, or activity); 3. to incite or stimulate (a person, animal, etc.) to action.

dant's conduct was a reflexive, impulsive reaction to the victim's conduct. Here, the victim's conduct was remote in time to Pak's offense conduct. Pak's conduct can not be considered a reflexive response, but rather, was a premeditated act of revenge. Under such circumstances, a downward departure under section 5K2.10 would have been inappropriate.

■ Pak's claim that his trial counsel should have argued for a downward departure under section 5K2.11 is equally unavailing. There was ample evidence to suggest that Pak's use of a firearm and a secluded location was not intended to protect himself and bystanders, but rather to ensure that he would be able to successfully execute the crime undetected. Under the circumstances, it was entirely reasonable for trial counsel not to argue for a downward departure based on section 5K2.11. Accordingly, Pak's claim that he is entitled to collateral relief on the basis of his trial counsel's failure to argue for downward departures under these two sections is unwarranted.

### 2. *Rule 32 Claims*

Pak also contends that this court failed to comply with Rule 32(a)(1) [3] because it failed to afford Pak an opportunity to address the court before determining a tentative sentence. In raising his challenge, Pak refers to an excerpt from the transcript of the sentencing proceeding, which reads as follows:

> What I'd like to do first off is turn to the question of downward departure and argue that, get that out of the way, and then move on more generally based upon rulings of the court to figure out where we ought to go with sentencing, and at that time counsel will be permit-

ted to make a general statement. Mr. Pak, you'll be permitted to make any statement you'd like to make, and it's my intention to give you my tentative sentence and then permit you again a chance to object or to make further argument if you would like.

Tr. Sentencing p. 6, ¶¶ 15–23. Pak's challenge appears to be based on an understandable, though erroneous, reading of the transcript. At sentencing, this court addressed Pak and stated that he would be permitted to speak on his own behalf *after* discussion of the downward departure issue. Instead of inserting a period after the word "make," thereby ending the sentence, the court reporter inserted a comma, continuing the sentence to include the court's statement to the counsel, which advised them that it was "my intention to give you [both counsel] my tentative sentence and then permit you again a chance to object or to make further argument if you would like." This transcription decision makes it appear as though the court addressed Pak, advised him that he would be given a chance to speak, and then advised him that he would be given a second opportunity to "object or make further argument" after the court stated the tentative sentence. The court never intended that Pak would be permitted to object or argue; that statement was directed at counsel. Pak was, however, given the required opportunity to address the court, and he did so.

Rule 32(i)(1)(D) provides that "[a]t sentencing, the court may, for good cause, allow a party to make a new objection at any time before sentence is imposed." Fed.R.Crim.P. 32(i)(1)(D). Rule 32(i)(4)(ii) provides that, before imposing sentence,

---

**3.** It appears that the section to which Pak intends to refer is actually Fed.R.Crim.P. 32(i)(4)(ii).

"the court must address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." Fed.R.Crim.P. 32(i)(4)(ii). The Federal Rules of Criminal Procedure do not require that a defendant be afforded multiple opportunities to make a statement regarding his sentence. The rules provide only that the court must give the defendant an opportunity to speak prior to imposing the sentence.

At sentencing, the court did provide Pak with an opportunity to speak following a statement of the applicable guideline range and prior to the imposition of his sentence.

THE COURT: All right. Let's turn to the question of sentencing in this case. Mr. Sherman, the guideline range is 46 to 57 months .... I'd like to hear from you. I'd like to hear from Mr. Pak, if he wishes.

MR. SHERMAN: I was going to ask Mr. Pak to address the court right now, your Honor.

THE COURT: Thank you.

THE DEFENDANT: Your Honor, I explain to you and everyone here what I did and how I feel right now, so just give me some time to explain to you everything. I met Ester in 1993. I'm sorry—in 1996. And when I met Ester she told me everything, she told me she was abused when she was young and -

THE COURT: Mr. Pak, I'm sorry to interrupt you, you if you could speak up a little bit or use the microphone.

Tr. Sentencing at p. 28, lines ¶¶ 7–23 (Nov. 9, 1999). Rule 32 requires that the court

afford a criminal defendant the opportunity to speak prior to the imposition of his sentence. Here, Pak was given the opportunity to speak on his behalf prior to sentencing, and made a lengthy statement. Accordingly, his claim that this court failed to follow the dictates of Rule 32, although based on an understandable misreading of the transcript, are without merit.

### 3. Early Release Claims

Under the auspices of section 2255,[4] Pak also claims that he should be released early from prison for the following reasons: (1) proper psychiatric treatment and medical counseling are available only outside the confines of prison; (2) early release from prison is warranted based on Pak's rehabilitation progress; (3) early release from prison is warranted based on a petition signed by approximately one hundred people; and (4) the four fundamental goals of sentencing have been accomplished.

The provisions of 18 U.S.C. § 3582(c) and Rule 35 of the Federal Rules of Criminal procedure pertain to the modification of an imposed term of imprisonment. Section 3582(c) provides that a court may modify a term of imprisonment once it has been imposed only upon the motion of the Director of the Bureau of Prisons and where: (1) extraordinary and compelling reasons warrant such a reduction; (2) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c) and a determination has been made by the Director of the Bureau of

**4.** As the government notes in its brief, a collateral attack on the calculation and manner of execution of a sentence is appropriate under section 2241, not section 2255, which pertains to the imposition of an unconstitutional or otherwise illegal conviction and sentence. Here, Pak is attacking the method by which his sentence is being executed. Ordi-narily, such an attack should be brought under section 2241, rather than section 2255. However, because Pak is proceeding *pro se,* the court construes his petition liberally to allow a collateral attack on his sentence. *See Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996).

Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and (3) Rule 35 permits, and the Sentencing Guidelines have been amended to provide, a lower guideline range for the offense for which the defendant is imprisoned. *See* 18 U.S.C. § 3582(c). Under Rule 35, a sentence may be modified after its imposition only in the following circumstances: (1) to correct clear error; or (2) upon motion of the government, to reflect the defendant's substantial assistance in prosecuting another person. Neither section 3582 nor Rule 35 is applicable in Pak's case. Pak's claims that his time in incarceration has resulted in his rehabilitation is irrelevant, as he is, by statute and rule, not eligible to have his sentence modified.

*Conclusion*

The court has considered all of the arguments in Pak's voluminous pleadings and finds them to be without merit. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. The clerk shall close the file.

It is so ordered.