**UNITED STATES of America, Appellee,**

v.

Juan Alfredo **LABEILLE–SOTO,** also known as Luciano Madaro, also known as Juan Badlle, also known as Juan Santo, also known as Luciano Madro, also known as Juan Labelle, also known as Domingo Santo, also known as Juan Sonto, also known as Luciano Madero, also known as Joan Sonto, also known as Lucianno Madre, Defendant–Appellant.

**Docket No. 97–1600.**

United States Court of Appeals, Second Circuit.

Argued Sept. 14, 1998.

Decided Nov. 9, 1998.

94

David C. Finn, Assistant United States Attorney, New York, New York (Mary Jo White, United States Attorney for the Southern District of New York, Dietrich L. Snell, Assistant United States Attorney, New York, New York, on the brief), for Appellee,

Steven M. Statsinger, New York, New York (The Legal Aid Society, Federal Defender Division, Appeals Bureau, New York, New York, on the brief), for Defendant–Appellant.

Before: KEARSE, Circuit Judge, POLLACK * and CASEY **, District Judges ***.

KEARSE, Circuit Judge:

Defendant Juan Alfredo Labeille–Soto ("Labeille"), who had previously been deported from the United States after being convicted of an aggravated felony, appeals from a judgment entered in the United States District Court for the Southern District of New York following his plea of guilty before Jed S. Rakoff, *Judge*, convicting him on one count of reentering the United States without permission, in violation of 8 U.S.C. § 1326 (1994). Labeille was sentenced, within the range recommended by the Sentencing Guidelines (1996) ("Guidelines"), to 63 months' imprisonment, to be followed by a three-year term of supervised release, and was ordered to pay a special assessment of $100; the district court ordered that Labeille's 63–month prison term be deemed to have commenced some 18 months earlier, in order to give him credit for part of the time he had served on an unrelated state criminal charge. On appeal, Labeille contends that the court could not properly give him sentencing credit in this manner and should instead have granted him a downward depar-

* Honorable Milton Pollack, of the United States District Court for the Southern District of New York, sitting by designation.
** Honorable Richard Conway Casey, of the United States District Court for the Southern District of New York, sitting by designation.
*** Pursuant to 28 U.S.C. § 46(b) and an order of the Chief Judge of this Court certifying a judicial emergency, this case was heard by an emergency panel consisting of one judge from this Court and two judges of the United States District Court sitting by designation.

ture from the Guidelines range. The government agrees that the court lacked the authority to backdate the commencement of Labeille's sentence and to grant a sentencing credit, but it contends that the court's failure to depart is not appealable. Labeille also contends that the special assessment in the amount of $100, rather than the $50 in effect at the time his offense was completed, violated the *Ex Post Facto* Clause of the Constitution. The government agrees with this contention. For the reasons that follow, we agree with the parties that the district court lacked the authority to instruct that the commencement of Labeille's sentence be retroactive and to grant Labeille sentencing credit, and we remand for correction of the judgment to delete such instructions. We also direct that the judgment be corrected to reduce the special assessment to $50.

## I. BACKGROUND

In 1986, Labeille, an alien, was convicted of importing cocaine into United States, in violation of 21 U.S.C. § 952(a), an aggravated felony within the meaning of 8 U.S.C. § 1101(a)(43). In 1991, he was deported. He subsequently reentered the United States without having received permission to do so from the Attorney General of the United States.

On November 8, 1994, Labeille was arrested by New York City police officers and accused of selling narcotics. In 1995, he was convicted in state court of the attempted criminal sale of a controlled substance in the third degree and was sentenced to a prison term of one-to-three years. While Labeille was serving that state prison term, officials of the Immigration and Naturalization Service ("INS") learned of his presence in the United States and, on April 19, 1996, determined that he had reentered the country unlawfully. Deportation proceedings were commenced, and an INS detainer was lodged with the state. On October 7, 1996, the state surrendered Labeille to INS custody, where he served the remainder of his state prison term. That state term expired as of July 19, 1997.

In a federal complaint filed in late October 1996, Labeille was charged on one count of entering, attempting to enter, and being found in the United States without permission of the Attorney General after having been deported following a felony conviction, in violation of 8 U.S.C. § 1326. Thereafter, with Labeille's consent, the filing of an indictment was delayed during the pendency of plea negotiations. The indictment was eventually filed in March 1997, and trial was scheduled for June. On the day the trial was to begin, Labeille pleaded guilty. Sentencing, originally scheduled for September, was adjourned until October 1997 at Labeille's request.

In the presentence report prepared on Labeille, the Probation Department concluded that his total offense level was 21 and his Criminal History Category was V, yielding a recommended Guidelines range of imprisonment of 70–87 months. Because Labeille agreed to be deported at the completion of his sentence, the report recommended a one-level downward departure, for a range of 63–70 months. The report recommended a sentence of 63 months.

In response, in a letter from his counsel Robert M. Baum to the district court dated October 3, 1997 ("Baum Letter"), Labeille urged the court to grant him a variety of adjustments, credits, and departures, only two of which are pertinent to this appeal. First, he requested that the court "downwardly depart from the Guidelines by 6 months" (Baum Letter at 7) in order to give him "credit for time spent in state custody when INS was aware of his illegal reentry into this country yet took no action to proceed with the formal filing of charges in this case" (*id.* at 1). Second, he urged the court to impose a prison term of 37 months, rather than 63 months, in order to give him 26 months' "credit" for the time served on his state sentence, and in effect make his sentence for the instant offense "concurrent with his state sentence." (*Id.* at 11–12.)

In imposing sentence on October 9, 1997, the district court rejected Labeille's request for a departure on account of the INS's six-month delay in the filing of charges, stating that "that delay does not strike me at all of the magnitude as to warrant [a] departure."

(Sentencing Transcript, October 9, 1997 ("Tr."), 4.) The court also rejected, at least in part, Labeille's request for 26 months' credit for time served on his state sentence. Although the court stated that it believed it had the power to grant such a request pursuant to Guidelines § 5G1.3 (*see, e.g.*, Tr. 28, 36–37), it concluded that such credit would be inappropriate given the seriousness of Labeille's state crime and the fact that it was unrelated to his federal crime. The court hypothesized that such credit might be given to a defendant prosecuted at different times for state and federal offenses that were "part of a single transaction," which would make it reasonable "to view it as one overall package" and to combine the punishments. (Tr. 28.) The court pointed out that Labeille's offenses of illegal reentry and narcotics trafficking were not related.

Nonetheless, the court viewed Labeille's circumstances as "a little atypical" (Tr. 31) on the basis that Labeille was "getting hit pretty hard" for the instant offense "because the prior crime happened to be an aggravated felony," and "because he subsequently committed another crime, serious crime but one for which he was separately prosecuted and punished, namely the state drug crime" (Tr. 31–32). The court concluded that Labeille should be sentenced to 63 months for the present offense but should be given six months' credit—though the court was uncertain whether to call that credit a "departure" or a partial "retroactive concurrency" with the state sentence:

> I think on balance I'm going to make a modest departure along the lines, again for lack of a better term, [of] retroactive concurrency—.

(Tr. 38; *see also id.* at 40 ("I think perhaps it is" "to be deemed a departure"); *id.* at 41 ("I am not sure it is really a departure.")). The court stated

> I reach this determination after having already concluded that automatically any sentence that I would impose would, but for this additional departure, run from October 1996, I believe the exact date was October 7, 1996, when he was taken into Federal custody. So this is in addition to that, but I make it explicit in case it isn't

automatic that I would in any event find that it constitutes a departure but that this sentence to be imposed would normally run from October 7, 1996. But I will instead have the sentence I am about to impose run from six months earlier than that.

> That's why I am not sure it is really a departure. I think it is really a form of calculating concurrency and one that nevertheless goes beyond the clear letter of the guidelines and implicates more than policies of the consecutive concurrent guidelines.... [T]he total picture presented when viewed from the standpoint of concurrency versus consecutiveness seems to me to warrant some modest earlier date as the appropriate date.

> In this regard, Mr. Baum, I take account of your point about the delay, but I don't make it a ground for separate departure. I don't think it qualifies as separate departure but I think it is a relevant fact in determining this mix of where is the appropriate point for the concurrency to begin....

> . . . . .

> Based on that, I will impose a sentence of 63 months to run from whatever six months before October 7, 1996 is—April 7, 1996.

(Tr. 40–42.)

Accordingly, the court instructed that Labeille's 63–month sentence be deemed to have started to run some 18 months before the court imposed it. The written judgment filed on October 14, 1997 ("October 1997 Judgment" or "Judgment"), stated that "[d]efendant is to be given credit for all time served since April 7, 1996 (i.e. his federal custody since October 7, 1996 plus six months of the previous state custody). See page 7." (October 1997 Judgment at 2.) At page 7, the Judgment stated, in pertinent part, as follows:

> The sentence departs from the guideline range ... for the following specific reason(s):.... 2. In ... calculating the time from which sentence is to run (concurrently with any remaining state time), credit is given for all state and federal custody time

since April 7, 1996, for the reasons stated at the sentencing hearing on 10/09/97, see transcript.

(October 1997 Judgment at 7.)

## II. DISCUSSION

Labeille has appealed, contending principally that the district court indicated its desire to impose a sentence that was 18 months below the bottom of the applicable Guidelines range; that the methods chosen by the court to achieve that end, to wit, "backdating . . . the date that [Labeille's] sentence would 'commence'" and ordering that he be given 18 months' sentencing "credit" (Labeille's brief on appeal at 13), were impermissible as a matter of law; and that this Court should therefore vacate his sentence and remand the matter to allow the district court to grant a downward departure. The government, which in the proceedings below failed to point out that the backdating and crediting discussed and adopted by the court were beyond the court's authority, agrees with Labeille that these methods were impermissible as a matter of law. The government argues, however, that there should be no remand for resentencing because denials of downward departures are not reviewable.

For the reasons that follow, we agree with the parties that the court lacked the authority to grant Labeille sentencing credit, whether by backdating the commencement of sentence, or by ordering that such credit be given, or by seeking to make the instant sentence retroactively concurrent with his previously discharged state sentence. Further, although we reject the government's contention that the district court's refusal to depart in these circumstances is not reviewable, we also conclude that the record in this case provides no basis for a departure on the grounds urged by Labeille on this appeal.

### A. Sentence Commencement, Concurrence, and Credits

■ The Sentencing Reform Act of 1984 (the "Act"), 18 U.S.C. § 3551 *et seq.*; 28 U.S.C. §§ 991–998 (1994), along with the Sentencing Guidelines promulgated pursuant to the Act, contain several pertinent provisions governing the commencement of a sentence, the extent to which a defendant is entitled to credit in connection with a prior sentence, and the extent to which a sentence may be imposed to run concurrently with another sentence. First, with respect to the commencement of a sentence, the Act provides that

[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service at, the official detention facility at which the sentence is to be served.

*Id.* § 3585(a). We see nothing in the Act to indicate that the court is permitted to order that the sentence be deemed to have commenced on an earlier date. Indeed, the determination of the precise date on which a sentence begins appears to have been intended to be a ministerial decision that depends on the timing of the defendant's arrival at the appropriate place with respect to the sentence that is to be served, and we have held that "[a]fter a defendant is sentenced, it falls to [the] BOP, not the district judge, to determine when a sentence is deemed to 'commence'. . . ." *Werber v. United States,* 149 F.3d 172, 179 (2d Cir.1998); *see also United States v. Pineyro,* 112 F.3d 43, 45 (2d Cir.1997) (per curiam).

■ Second, the Act provides that "if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively." *Id.* § 3584(a). From this section's use of the modifier "undischarged," it may reasonably be inferred that Congress did not intend to allow the court to make a new prison term run concurrently with a prison term that has already been completed. Reflecting this inference, Guidelines § 5G1.3 is entitled "Imposition of a Sentence on a Defendant Subject to an *Undischarged* Term of Imprisonment" (emphasis added); it describes (a) the circumstances in which the new sentence on such a defendant must be consecutive and (b) the circumstances in which the new sentence must be concurrent; and it gives the court discretion in instances not covered by (a) or (b), stating that

[i]n any other case, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense, Guidelines § 5G1.3(c) Policy Statement. *See also* Sentencing Guidelines § 5G1.3(c) Policy Statement (1994) ("In any other case, the sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable punishment for the instant offense."). In each set of circumstances, however, the predicate is that the defendant's prior prison term remains "undischarged." There is no provision, either in the Act or in the Guidelines, stating that the court may order that the sentence it imposes be deemed to have been served concurrently with a prior prison term that has been fully discharged. If the defendant has completed his state prison term before the federal sentence is imposed, § 5G1.3 does not apply, and his federal prison term cannot be imposed concurrently. *See, e.g., United States v. Adeniyi*, 912 F.2d 615, 618 (2d Cir.1990).

Third, with respect to a defendant's entitlement to credit in connection with a prior sentence, the Act provides as follows:

(b) Credit for prior custody.—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

*that has not been credited against another sentence.*

18 U.S.C. § 3585(b) (emphasis added). Under the last quoted phrase, a defendant has no right to credit on his federal sentence for time that has been credited against his prior state sentence. Further, this section does not specify what entity is to calculate the credit to which the defendant is entitled, and the Supreme Court has concluded that

"§ 3585(b) does not authorize a district court to compute the credit at sentencing." *United States v. Wilson*, 503 U.S. 329, 334, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992). Rather, credit "is granted by the Attorney General through the Bureau of Prisons after a defendant is sentenced," and although the defendant may, after exhausting his administrative remedies, obtain judicial review of that Bureau's determination, the credit is "'not [to be granted] by a district court at the time of sentencing.'" *United States v. Galicia–Delgado*, 130 F.3d 518, 522 (2d Cir.1997) (quoting *United States v. Keller*, 58 F.3d 884, 894 (2d Cir.1995)); *see United States v. Pineyro*, 112 F.3d at 43.

In light of these principles, the district court's method of reducing the time to be served by Labeille for the instant offense embodied several errors of law. First, to the extent that the court sought to achieve its goal by ordering that the date of the commencement of its sentence be deemed April 7, 1996 (*see* Tr. 40–41) ("I will ... have the sentence I am about to impose run from six months earlier than" the "October 7, 1996, [date] when he was taken into Federal custody"), that method was foreclosed by § 3585(a), which provides expressly that a sentence commences when the defendant enters custody at, or is received in custody for transportation to, the official detention facility at which his sentence for the instant offense is to be served. The precise date on which that occurred is to be determined by the Bureau of Prisons.

Further, to the extent that the court sought to make the prison term imposed for the instant offense concurrent with so much of Labeille's state prison term as was served after April 1996, the court did not have that option because by the time the court sentenced Labeille for the instant offense, his state prison term had been fully discharged. Moreover, the court had no authority to grant Labeille sentencing credit for time he spent in federal custody, either before or after service of his state term of imprisonment was completed in July 1997, because credit determinations are to be made in the first instance by the Bureau of Prisons, not by the district court at sentencing.

**100**

We conclude that, to the extent that the court ordered that Labeille be given sentencing credit and ordered that his sentence be deemed to have commenced on, and to run from, April 7, 1996, those instructions exceeded the court's authority as a matter of law, and must be expunged from the October 1997 Judgment.

**B.** *The Possibility of a Downward Departure*

Labeille contends that, in light of these errors, this Court should vacate the Judgment and remand for resentencing, allowing the district court to reduce the length of his prison term by means of a downward departure. Although we reject the government's position that we lack jurisdiction to consider this contention, we reject Labeille's contention that there should be a remand for resentencing.

■ A defendant's contention that the sentencing court should have granted a downward departure is ordinarily not a proper matter for appeal, *see, e.g., United States v. Ritchey*, 949 F.2d 61, 63 (2d Cir.1991) (per curiam); *United States v. Adeniyi*, 912 F.2d at 618–19; *United States v. Colon*, 884 F.2d 1550, 1552 (2d Cir.), *cert. denied*, 493 U.S. 998, 110 S.Ct. 553, 107 L.Ed.2d 550 (1989), unless the refusal to depart resulted from an erroneous interpretation of law, *see, e.g., United States v. Adeniyi*, 912 F.2d at 618; *see also* 18 U.S.C. § 3742(a)(1) (sentence imposed in violation of law is appealable), or was based on the court's erroneous view of the extent of its departure authority, *see generally United States v. Haynes*, 985 F.2d 65, 68 (2d Cir.1993); *United States v. Richardson*, 923 F.2d 13, 15 (2d Cir.1991). In the normal case, a defendant seeking to come within the exception to the general rule of nonreviewability contends that the court erred in believing that it did not have the power to depart. In the present case, Labeille contends that the court's decision not to depart should be reviewable because the court relied on legally erroneous assumptions as to its power to impose the shorter sentence in the manner it ultimately fashioned, and those errors of law led it to deny a departure as unnecessary. We agree. Al-

though the decision whether to depart is committed to the sentencing court's discretion, the sound exercise of discretion requires the application of correct legal principles. When the sentencing court has indicated its desire to impose a sentence outside the Guidelines range, we see no material difference between a mistaken view that it had no power to depart and a mistaken view that it could impose such a sentence in a way that the law does not permit. We conclude that a court's failure to depart, based on either type of mistake, is reviewable.

■ This conclusion does not, of course, resolve the substantive matter of whether a departure would have been permissible here. A sentencing court may depart, "impos[ing] a sentence outside the range established by the applicable guideline, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" Guidelines § 5K2.0 (quoting 18 U.S.C. § 3553(b)). One of the major purposes of the introduction of the Sentencing Guidelines was the avoidance of unwarranted disparities among defendants who have similar records and are guilty of similar conduct. Accordingly, "[b]efore a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline." *Koon v. United States*, 518 U.S. 81, 98, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). It is thus inappropriate for the sentencing court to grant a departure because of the absence of a factor for whose presence the relevant guideline specifically provides an increase, for such a factor is one that the Commission necessarily considered. *See, e.g., United States v. Barton*, 76 F.3d 499, 503 (2d Cir.1996). Further, where the sentencing court has not found an aggravating or mitigating circumstance of a kind or to a degree not adequately taken into consideration by the Sentencing Commission, the court is not empowered to depart on the sole ground that the court views the punishment prescribed by the relevant guideline as too

severe. *See, e.g., United States v. Chabot,* 70 F.3d 259, 262 (2d Cir.1995) (per curiam).

 In the present case, the district court, assuming that Labeille's sentence would otherwise run from October 7, 1996, when he was delivered into federal custody, backdated its sentence by six months to April 7, the approximate time at which the INS "found" Labeille to be in the United States unlawfully. The court did not find, however, that the government's six-month delay in initiating the federal prosecution following the INS's discovery of Labeille's offense, took the present case outside of the heartland of Guidelines cases or presented any atypicality. To the contrary, the court stated expressly, both at the beginning and at the end of the sentencing hearing, that the government's delay in commencing the present prosecution did not warrant a departure:

> [T]he six month delay in the filing of charges by the Immigration and Naturalization Service ... does not strike me at all of the magnitude as to warrant [a] departure.

(Tr. 4.)

> Mr. Baum, I take account of your point about the delay, but I don't make it a ground for separate departure. I don't think it qualifies as separate departure....

(Tr. 41.) Accordingly, the district court has already rejected the contention that the delay in the commencement of the federal prosecution takes Labeille's circumstances outside of the heartland.

Nor could the "magnitude" of the sentence (Tr. 32) justify a departure because of the factors on which court based its view that this case was "a little atypical" (Tr. 31). For example, to the extent that the court felt that the Guidelines-recommended sentence was harsh because Labeille's prior conviction was for an "aggravated" felony, that factor could not be an appropriate basis for a departure since the statute itself provides greater penalties for illegal reentrants whose predeportation felonies were "aggravated," *compare* 8 U.S.C. § 1326(b)(1) (up to 10 years' imprisonment where predeportation conviction was only for a felony "other than an aggravated

felony"), *with id.* § 3126(b)(2) (up to 20 years' imprisonment where predeportation conviction was for "an aggravated felony"). In accordance with the statutory scheme, the applicable guideline expressly provides for a 16-step increase in offense level "[i]f the defendant previously was deported after a conviction for an aggravated felony." Guidelines § 2L1.2(2)(b). Nor did the fact that Labeille, after reentering illegally, "committed another crime ... for which he was separately prosecuted and punished" (Tr. 31–32) distance him from the heartland, for the Guidelines deal expressly with the proper calculation of the criminal history for a defendant who commits a federal crime and subsequently commits an unrelated crime for which he is sentenced prior to being sentenced for the federal crime. Thus, the Guidelines state that "prior sentence[s]" are to be counted, Guidelines § 4A1.1, including "[a] sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense ... if it was for conduct other than conduct that was part of the instant offense," *id.* § 4A1.2 Application Note 1. We conclude that the factors that led the district court to view Labeille's circumstances as at all atypical are factors that the Sentencing Commission had plainly considered.

In sum, the only factors that the court viewed as having an unusually harsh effect on Labeille are factors for which the Guidelines expressly provide increased punishment and thus cannot be deemed factors outside the heartland of cases that the Commission considered. And the government's delay in initiating the present prosecution was expressly found by the court not to be sufficiently atypical to warrant a departure. We conclude that the record reveals no reason to remand for resentencing.

## C. *The $100 Special Assessment*

 Labeille also makes a meritorious *ex post facto* challenge to the special assessment in the amount of $100, rather than $50. The government, which sat mute when the court imposed the $100 assessment at the sentencing hearing, concedes the correctness of this challenge.

From 1984 through April 23, 1996, a federal sentencing court was required to impose on an individual defendant convicted of a felony a special assessment of $50. 18 U.S.C. § 3013(a)(2)(A) (1994). As of April 24, 1996, Congress enacted legislation to increase the special assessment from $50 to $100, see 18 U.S.C. § 3013(a)(2)(A) (Supp. II 1996), and provided that the increase

> shall, to the extent constitutionally permissible, be effective for sentencing proceedings in cases in which the defendant is convicted on or after the date of enactment of this Act,

Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 1996 U.S.C.C.A.N. (110 Stat.) 1214, at 1241 (codified at 18 U.S.C. § 2248 note).

 When a law increases the penalty for an offense, the *Ex Post Facto* Clause forbids its application to an offense that was completed before the law's enactment. *See, e.g., Miller v. Florida*, 482 U.S. 423, 429–35, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987). Here, the offense with which Labeille was charged was entering, attempting to enter, and being found in the United States without the requisite permission. The offense of illegal entry or illegal attempted entry is complete as soon as such an entry or attempt is made. *See United States v. Rivera–Ventura*, 72 F.3d 277, 281 (2d Cir.1995) (and legislative history cited therein). The offense of being "found in" the United States in violation of § 1326 is complete when "the authorities both discover the illegal alien in the United States, and know, or with the exercise of diligence typical of law enforcement authorities could have discovered, the illegality of his presence." *Id.* at 282.

Labeille's illegal reentry—which the Judgment recites as the offense of conviction—occurred not later than November 8, 1994 (the date of his arrest in New York City), and that offense plainly was complete prior to the April 24, 1996 effective date of the increase in the special assessment amount. Even had Labeille been convicted of being found in the United States illegally, the INS's determination that he was present illegally on April 19, 1996, would have made his offense complete at least five days before the

special assessment increase became effective. We thus agree with the parties that the special assessment of $100 on Labeille violated the *Ex Post Facto* Clause.

### CONCLUSION

We have considered all of Labeille's arguments in support of a remand for downward departure and have found them to be without merit. We remand to the district court for correction of the October 1997 Judgment to (1) delete the instructions with regard to sentencing credit and the timing of the commencement of Labeille's sentence, and (2) reduce the special assessment to $50.