UNITED STATES of America,
Appellee,

v.

Luis Santiago GONZALEZ,
Defendant–Appellant.

Docket No. 01–1073.

United States Court of Appeals,
Second Circuit.

Argued Aug. 8, 2001.

Decided Feb. 7, 2002.

Darrell B. Fields, The Legal Aid Society, Federal Defender Division—Appeals

Bureau, New York, NY, for Defendant–Appellant.

Daniel A. Braun, Assistant United States Attorney, New York, NY (Mary Jo White, United States Attorney for the Southern District of New York, on the brief), for Appellee.

Before: MINER, JACOBS, and CALABRESI, Circuit Judges.

MINER, Circuit Judge.

Defendant-appellant Luis Santiago Gonzalez appeals from a judgment of conviction and sentence entered in the United States District Court for the Southern District of New York (Kaplan, *J.*), sentencing him principally to a term of imprisonment of twelve months and one day. The sentence was imposed following his conviction on a plea of guilty to embezzling funds from a federally insured bank. Through his counsel, Gonzalez at sentencing requested a discretionary downward departure in the applicable guideline range based on a claim of aberrant behavior. The district court rejected that request as a matter of law. Whether the rejection was justified in this case as a matter of law is the sole issue facing this Court on appeal. We hold that it was not, and for the reasons that follow we vacate the sentence and remand the case to the district court for a resentencing consistent with this opinion.

## BACKGROUND

Employed by Deutsche Bank as a payroll administrator, Gonzalez was able to manipulate electronic payroll records to cause a severance payment of $140,000 to be made in the name of Rahul Bajaj on January 28, 2000. Bajaj had been fired by the bank on December 31, 1999. Gonzalez also altered direct deposit information to transfer the severance payment for deposit

into an account at Fleet Bank opened by his brother at his direction on January 7, 2000. Taxes and payroll deductions subtracted from the $140,000 payout left a net amount of approximately $83,405 for deposit in the Fleet Bank account. On the same date that the funds were deposited, Gonzalez' brother attempted to make a withdrawal of $20,000. Suspicious of the transaction, officials at Fleet Bank contacted their counterparts at Deutsche Bank to inquire about the deposited funds. Deutsche Bank promptly discovered the embezzlement and confronted Gonzalez, who admitted what he had done and signed a written statement. Since Fleet Bank had permitted no withdrawals, all the embezzled funds were returned to Deutsche Bank.

In a one-count indictment filed on September 13, 2000, Gonzalez was charged with embezzling funds from a federally insured bank, in violation of 18 U.S.C. § 656. He appeared before the district court on October 12, 2000 to enter a plea of guilty. After an extended and thorough allocution, the district court accepted the guilty plea, finding that it was knowing and voluntary and supported by facts that established all the elements of the offense charged. In December 2000, the Probation Office provided the parties and the district court with a Pre–Sentence Investigation Report. In the Report, an offense level of thirteen was calculated for Gonzalez as follows: (1) a base level of six, pursuant to Section 2F1.1 of the United States Sentencing Guidelines (the "Guidelines"); (2) an upward adjustment of seven points, pursuant to Section 2F1.1(b)(1)(H), on the basis of the amount of funds involved; (3) an upward adjustment of two points, pursuant to Section 2F1.1(b)(2)(A), because the offense involved more than minimal planning; and (4) a downward adjustment of two points, pursuant to Section 3E1.1(a), for acceptance of responsibility. With a Category I criminal history by virtue of no prior convictions, and with an offense level of thirteen, the Guidelines for Gonzalez called for imprisonment in the range of twelve to eighteen months.

By letter dated January 12, 2001 and addressed to the district court, counsel for Gonzalez requested a five-level downward departure in the Guidelines offense level established by the Probation Office. This request was based upon a claim that Gonzalez' "criminal act was an aberration in an otherwise law-abiding life." The departure would result in a sentencing range of zero to six months' imprisonment. The claim of aberrant behavior was said to be supported by Gonzalez' lack of a prior criminal record, his steady employment history, his speedy admission of guilt and cooperation with authorities, his remorse, and his reputation as a good and honest person.

Cited as authority for the downward departure for aberrant behavior were *Zecevic v. United States Parole Commission*, 163 F.3d 731 (2d Cir.1998) (applying a totality of circumstances test) and Guidelines Section 5K2.20 and Application Notes (identifying specific factors to be considered in departure). Section 5K2.20 became effective on November 1, 2000, a date subsequent to Gonzalez' offense. U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 5K2.20. Counsel contended that the departure was justified under the test established in the guideline as well as the test established in the case but stated that "to the extent the *Zecevic* test may be regarded as more liberal it should control to avoid an *ex post facto* problem." Before the government's response to the letter was received, the probation officer issued a sentencing recommendation for downward departure and a sentence of imprisonment for one month.

By letter dated February 2, 2001, the government responded to counsel's letter. Although the government argued that Section 5K2.20 should be applied in Gonzalez' case, it contended that, under either the test enunciated in that guideline or the test enunciated in *Zecevic,* Gonzalez did not qualify for a downward departure. In support of its position, the government asserted, among other things, that Gonzalez planned and committed his offense over a three-week period and therefore that the offense could not be considered spontaneous; that Gonzalez enlisted the help of another person, his brother; that he was motivated by pecuniary gain; that his early confession was not significant due to the transparent nature of his conduct; and that he offered no justification, such as extreme pressure or psychological disorder, for his conduct. The government argued that there was no basis for a claim that the crime committed by Gonzalez was a single occurrence that was committed without significant planning or was of a limited duration.

Gonzalez appeared for sentencing on February 5, 2001. Also present were his counsel and counsel for the government. After commenting that it found the applicable Guidelines range too severe in this case, the district court proceeded to review the request for a downward departure for aberrant behavior. The court first addressed the question of whether Section 5K2.20 was applicable, noting that the answer depended upon whether the guideline was a clarification of existing law or a substantive change. The court stated that "[i]f it is a clarification, it applies. If it is a substantive change, it can't be applied because the *ex post facto* clause precludes application of different law to the defendant's conduct, which was completed before November 1, 2000." Finding it unnecessary to resolve the question in light of its ultimate conclusion that an aberrant behavior departure was not warranted under either Section 5K2.20 or *Zecevic,* the court proceeded first to examine the requirements of Application Note 1 of the guideline.

The court stated that the Application Note "requires that the crime had been a single criminal occurrence or criminal transaction that was committed without significant planning, was of limited duration, and represented a marked deviation by the defendant from an otherwise law-abiding life." Noting that it was undisputed in Gonzalez' case that there was but a single criminal occurrence reflecting a marked deviation from a life that was otherwise law abiding, the district court found "that the offense was not of limited duration in the sense that phrase is used in the application note." This finding was said to eliminate the need for a finding as to the "without significant planning" element of the Application Note.

In its analysis of the "limited duration" element, the district court said: "I think the point of the guideline in respect of duration is to try to identify some set of criminal activity, some subset of criminal activity which is, in some significant degree, spontaneous." Observing that "spontaneity isn't the easiest term to define here either," the court found that Gonzalez "had more than enough time to think about what he was doing and to stop it, whatever inexplicable situation caused him to embark on the scheme in the first place." With reference to this finding, the court stated, "[t]he consequence I hold as a matter of law is that the offense was not one of limited duration within the meaning of the application note, and assuming that 5K2.20 applies, I would be obliged as a matter of law to deny the application for a departure."

Turning to the *Zecevic* totality of circumstances test for aberrant behavior, the district court stated that the *Zecevic* factors "cut in different directions" in this case. On one side of the equation, the court noted the lack of a prior record (said to be insufficient alone to justify departure), the singular nature of the criminal act, and the fact that the defendant admitted his guilt as soon as the offense was detected (said to be inevitable under the circumstances). The court concluded the *Zecevic* analysis as follows:

> On the other side of the equation, however, the offense involved more than minimal planning. And although it may have begun spontaneously or impulsively, it went on too long for that fact to weigh heavily in the analysis.
>
> The motive, obviously, was greed. The fact that the defendant didn't profit from the offense is attributable only to the fact that he was caught essentially in the act. Therefore, considering the totality of the circumstances, I hold as a matter of law that no downward departure is applicable under *Zecevic* either.

The court then proceeded to sentence Gonzalez to a term of imprisonment of twelve months plus one day, a term of supervised release of three years, and a mandatory special assessment of $100. Bail was continued pending an appeal and the execution of the sentence was stayed pending appeal.

## DISCUSSION

### I. *Appealability*

A district court's denial of an application for a discretionary downward departure is generally not appealable. *See United States v. Middlemiss*, 217 F.3d 112, 125 (2d Cir.2000). A denial of a downward departure is subject to review only when the district court misapplies the Guidelines, imposes an illegal sentence, or mis-

takenly believes that it lacks the authority to depart. *See United States v. Labeille–Soto*, 163 F.3d 93, 100 (2d Cir.1998). We presume that district courts are aware of their authority to depart downward. *See United States v. Brown*, 98 F.3d 690, 694 (2d Cir.1996). This presumption is overcome, however, where there is "clear evidence of a substantial risk that the judge misapprehended the scope of his departure authority." *Id.; see also United States v. Galvez–Falconi*, 174 F.3d 255, 257 (2d Cir. 1999) (remanding district court's decision to deny a downward departure where "at the very least, the district court's remarks at sentencing create[d] ambiguity as to whether the court understood its authority to depart").

In this case, after denying the departure requested under both Section 5K2.20 and *Zecevic*, the court stated:

> Now, I have carefully framed this ruling purely as a matter of law because it is my intention to make clear that if the Court of Appeals feels that I have the discretion to depart downward, I would certainly entertain that prospect. I think the sentence is too harsh, but my conscientious reading of *Zecevic* and the new guideline leads me to believe that I lack the discretion to do so, and that's the basis of my ruling on the departure.

This statement demonstrates that the district court believed it was without authority to award a discretionary downward departure in this case. The ruling denying Gonzalez' request was "framed ... purely as a matter of law" based on the two standards discussed by the court. It is thus apparent that the district court's refusal to depart was premised on purely legal, rather than discretionary, grounds. The misapprehension by the district court of its authority to depart alone confers jurisdiction on this Court. *See United States v. Grandmaison*, 77 F.3d 555, 561

(1st Cir.1996). Moreover, as will be seen, the district court applied the wrong legal standard regarding departure for aberrant behavior in arriving at its conclusion. Where the proper guideline legal standard to be applied is at issue, as in the case at bar, appellate review is warranted. *Zecevic*, 163 F.3d at 734. Here, the district court misapplied the Guidelines, erred as to the appropriate legal standard, and mistakenly believed that it lacked authority to depart. Accordingly, the denial of Gonzalez' application for a downward departure for aberrant behavior is appealable. *Cf. Middlemiss*, 217 F.3d at 125.

## II. *The Aberrant Behavior Standard Under* Zecevic

The Sentencing Guidelines recognized the authority of courts to depart downward for aberrant behavior prior to the Sentencing Commission's adoption of the specific Policy Statement set out in Section 5K2.20. Section 5K2.0, entitled "Grounds for Departure (Policy Statement)," sets forth a number of considerations that should enter into the discretionary authority to be exercised by district courts in awarding downward departures. The power to depart from the sentencing range established by the Commission is conferred by statute, as recognized in the first sentence of Section 5K2.0:

> Under 18 U.S.C. § 3553(b), the sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."

U.S.S.G. § 5K2.0. In accordance with the foregoing, the Guidelines specifically noted the possibility of departures for aberrant behavior in referring to "single acts of aberrant behavior that still may justify probation at higher offense levels through departures." U.S.S.G., ch. 1, pt. A, 4(d).

Recognizing that a single act of aberrant behavior might justify a downward departure, and aware of the absence of an appropriate rule in this Circuit defining the meaning of "single aberrant act," the panel in *Zecevic* undertook the formulation of such a rule. The panel recognized that there had been two approaches to the question, with some circuits concluding that what was contemplated was a spontaneous and thoughtless act not the result of substantial planning while other circuits employed a totality of circumstances test, with spontaneity and lack of planning not dispositive but being among a number of factors to be considered. *Zecevic*, 163 F.3d at 734. The panel aligned itself with those circuits adopting the totality of circumstances approach, defining aberrant behavior as a short-lived departure from a life that is otherwise law abiding and listing the following factors to be considered:

> (1) the singular nature of the criminal act; (2) the defendant's criminal record; (3) the degree of spontaneity and planning inherent in the conduct; (4) extreme pressures acting on the defendant, including any psychological disorders from which he may have been suffering, at the time of the offense; (5) the defendant's motivations for committing the crime, including any pecuniary gain he derived therefrom; and (6) his efforts to mitigate the effects of the crime.

*Id.* at 736.

Following the listing of factors, the panel wrote: "This list is not exclusive, and no one factor shall be dispositive." *Id.* The appellant in *Zecevic* failed the test of spontaneity applied in the first instance by the Parole Commission, and the Court deter-

mined that he failed the totality test as well. The panel wrote:

> Although he had the opportunity to and did present other evidence bearing on the totality standard, Zecevic presented no evidence to suggest he was suffering from any disorders or operating under any extreme pressures at the time he committed the offense, nor did he demonstrate any particular motive other than pecuniary gain. He did not claim that he had made efforts to mitigate the effects of the crime. Apart from his status as a first offender and the support of his mother, Zecevic has little else to recommend him for an aberrant behavior departure.

*Id.*

In *United States v. Martinez*, 207 F.3d 133 (2d Cir.2000), we reversed a downward departure for aberrant behavior by a district court after a remand for consideration in light of *Zecevic*. The defendant there participated in cocaine importation schemes spanning at least thirteen months. The panel noted the defendant's lack of a criminal record but observed that the schemes did not constitute a *"short-lived* departure" from a law-abiding life. *Id.* at 137. It rejected the trial court's reliance on a claim that the defendant was under pressure to pay the workers at his factory, finding the economic considerations for the crime did not meet the "extreme pressures" factor described in *Zecevic*. *Id.* at 138. The panel also rejected the following factors, considered by the district court, as of "highly questionable" connection to the aberrance of the defendant's behavior: charitable and volunteer activity, Type II diabetic condition, rehabilitative efforts, and family circumstances. *Id.* at 138–39. The panel described limitations on the expansion of the *Zecevic* factors in the following language:

> Although *Zecevic* does set forth a fluid totality of circumstances test, this does not justify the open-ended consideration of every conceivable basis for a downward departure in applying the test. The district courts must therefore give due regard to the relevance of a factor to the aberrant nature of the defendant's behavior in exercising their sound discretion under *Zecevic*. The degree of relevance of a particular factor will depend on the specific circumstances of each case.

*Id.* at 139.

### III. The Aberrant Behavior Test Under Section 5K2.20

Responding to the circuit split in the definition of aberrant behavior, the Sentencing Commission adopted Section 5K2.20 to resolve the conflict and to provide guidance for district courts faced with applications for downward departure based on aberrant conduct. In giving the reason for the amendment adopting the new Policy Statement, designated Section 5K2.20, and its Application Notes, which became effective on November 1, 2000, the Commission stated:

> This amendment addresses the circuit conflict but does not adopt *in toto* either the majority or minority circuit view on this issue. As a threshold matter, this amendment provides that the departure is available only in an extraordinary case. However, the amendment defines and describes "aberrant behavior" more flexibly than the interpretation of existing guideline language followed by the majority of circuits that have allowed a departure for aberrant behavior only in a case involving a single act that was spontaneous and seemingly thoughtless. The Commission concluded that this application of the current language in Chapter One is overly restrictive and may preclude departures for aberrant

behavior in circumstances in which such a departure might be warranted. For this reason, the Commission attempted to slightly relax the "single act" rule in some respects, and provide guidance and limitations regarding what can be considered aberrant behavior. At the same time, the Commission also chose not to adopt the "totality of circumstances" approach endorsed by the minority of circuits, concluding that the latter approach is overly broad and vague. The Commission anticipates that this compromise amendment will not broadly expand departures for aberrant behavior. U.S.S.G., supp. to app. C, amend. 603 (2000). In accordance with the foregoing, the factors single act and spontaneity were eliminated from considerations of downward departure for aberrant behavior.

Section 5K2.20 itself provides simply that "[a] sentence below the applicable guideline range may be warranted in an extraordinary case if the defendant's criminal conduct constituted aberrant behavior." Specifically excepted by the Policy Statement from consideration for departure below the guideline range are cases involving: offenses resulting in serious bodily injury or death; the discharge or other use of a firearm or dangerous weapon; a conviction for a serious drug trafficking offense; a defendant with more than one criminal history point; or a defendant with a prior state or federal felony conviction. None of the exceptions is applicable here.

Application Note 1 of Section 5K2.20 defines aberrant behavior as "a single criminal occurrence or single criminal transaction that (A) was committed without significant planning; (B) was of limited duration; and (C) represents a marked deviation from an otherwise law-abiding life." Application Note 2 of Section 5K2.20 sets forth various characteristics of the defendant that the sentencing court may consider in determining whether to depart for aberrant behavior: "(A) mental and emotional conditions; (B) employment record; (C) record of prior good works; (D) motivation for committing the offense; and (E) efforts to mitigate the effects of the offense." As is apparent, some of these considerations were included in the *Zecevic* factors and some were not.

## IV. The Proper Standard to Be Applied in This Case

Generally, the Guidelines in effect on the date the defendant is sentenced should govern the sentence imposed. 18 U.S.C. § 3553(a)(4)(A). However, "[i]f the court determines that the use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the *ex post facto* clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed." U.S.S.G. § 1B1.11(b)(1). *See also United States v. Paccione*, 949 F.2d 1183, 1204 (2d Cir.1991).

If the version of the Guidelines in effect at the time of sentencing is more "severe," than the version in effect when the offense was committed, *see United States v. Fitzgerald*, 232 F.3d 315, 318 (2d Cir.2000), or more "onerous," *see United States v. Zagari*, 111 F.3d 307, 323 (2d Cir.1997), there is an *ex post facto* problem and the earlier Guidelines should be applied. The Supreme Court has stated that "to fall within the *ex post facto* prohibition, two critical elements must be present: first, the law 'must be retrospective, that is, it must apply to events occurring before its enactment'; and second, 'it must disadvantage the offender affected by it.'" *Miller v. Florida*, 482 U.S. 423, 430, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (quoting *Weaver v. Graham*, 450 U.S. 24, 29, 101

S.Ct. 960, 67 L.Ed.2d 17 (1981)). Simply put, an amendment to a guideline that occurs after the commission of an offense is a violation of the *ex post facto* clause if it works to the detriment of a defendant. *See United States v. Seacott,* 15 F.3d 1380, 1386 (7th Cir.1994).

When an amended version of a guideline represents only a clarification by the Sentencing Commission of the original version rather than a substantive change, the amended version is to be applied. *See United States v. Kim,* 193 F.3d 567, 578 (2d Cir.1999). Likewise, where an amended guideline commentary serves to clarify and does not enhance punishment, the *ex post facto* clause is not implicated, and the general rule commanding use of the current version applies. *United States v. Mapp,* 990 F.2d 58, 61 (2d Cir.1993).

The current version of the guideline governing downward departure for aberrant behavior must be applied in this case. Previous to the adoption of that guideline, aberrant behavior was recognized as a basis for downward departure in a general way. It was recognized in Section 5K2.0 in the phrase "mitigating circumstances of a kind ... not adequately taken into consideration by the Sentencing Commission," and it was specifically recognized in U.S.S.G. ch. 1, pt. A, 4(d) in the phrase "single acts of aberrant behavior that still may justify probation at higher offense levels through departures." Courts attempted to flesh out these phrases through the adoption of various standards, *see, e.g., Zecevic,* 163 F.3d 731, but the Guidelines provisions themselves remained the same until the adoption of Section 5K2.20 and its Commentary. The Sentencing Commission addressed the issue in Amendment 603 and, in a Note to the Amendment, said that it "had not addressed 'single acts of aberrant behavior' at the time the Intro-

duction to the *Guidelines Manual* [in ch. 1, pt. A, 4(d)] originally was written." It may not have addressed the standard, but it certainly recognized aberrant behavior as a ground for downward departure. According to the Commission, the Amendment was adopted to "respond[ ] to a circuit conflict regarding whether, for the purposes of downward departure from the Guideline range, a 'single act of aberrant behavior' ... includes multiple acts occurring over a period of time." The Commission answered that question in the Application Note to Section 5K2.20 by expanding "single act of aberrant behavior" to mean a single criminal occurrence or transaction committed without significant planning, of limited duration, and displaying a marked deviation from a law-abiding life.

It cannot be said that the aberrant behavior test thus established is more severe or more onerous or somehow worked to the detriment of Gonzalez in comparison with a previously existing guideline. Previously, the Guidelines had no test or standard for the recognized departure ground of aberrant behavior. The new guideline and its commentary, by establishing a definitional standard, served to clarify an already existing basis for downward departure. However, even comparing the new guideline and commentary in Amendment 603 to *Zecevic,* it cannot be said that the Amendment is more severe, more onerous, or more detrimental to Gonzalez.

Under Section 5K2.20, the court may consider factors that it was not allowed to consider under *Zecevic,* such as the defendant's employment record and prior good works. *See Martinez,* 207 F.3d at 138–39 (stating that factors not enumerated in *Zecevic,* such as charitable works, were insubstantial and should not weigh in favor of departure); *Zecevic,* 163 F.3d at 736 (employment record not among enumerat-

ed factors despite Zecevic's argument that it demonstrated the aberrant nature of his conduct). Furthermore, the Sentencing Commission purposely excluded the requirement that an act be "spontaneous and seemingly thoughtless," from the new rule because it might preclude downward departures for aberrant behavior where they are warranted. U.S.S.G. supp. to app. C, amend. 603. In *Zecevic,* though not dispositive, spontaneity was among the factors the court could consider.

We therefore are unable to declare that the 5K2.20 standard is more restrictive or that the *Zecevic* standard is more liberal. Some factors that may be considered under one standard cannot be considered under the other and vice versa. At most, a comparison of the standards results in a "wash," and that is an insufficient reason not to apply the new guideline.

## V. *The Error of the District Court*

In making its determination about whether to depart downward, the district court decided that departure was not warranted under Section 5K2.20 because Gonzalez' behavior was not of a "limited duration" as required by the definition in Application Note 1. In assessing this factor, the court felt constrained "to try to identify some set of criminal activity, some subset of criminal activity which is, in some significant degree, spontaneous." The court wrestled with the issue of spontaneity in the following statement from the bench:

> Obviously, at one end of the spectrum is a split-second impulse during which an offense is completed. That's of limited duration. But what about an offense that takes 60 seconds or five minutes or an hour or a day or a week? The guidelines don't shed very much light on that. The key in my mind is the extent to which a period of time passes during

which the defendant, free of any short-lived impulse or emotional upset, has the opportunity to reflect and to consider calmly and rationally whether to go through with the offense. Whatever the precise limits, I'm satisfied here that this defendant had ample opportunity to make a rational choice, even after beginning the steps that ultimately led to the commission of the offense.

In considering the element of spontaneity, the district court erred. Spontaneity is not a "subset" of the limited duration factor or even of the lack of significant planning factor described in Application Note 1. The Sentencing Commission specifically rejected a rule that would have "allowed a departure for aberrant behavior only in a case involving a single act that was spontaneous and seemingly thoughtless." U.S.S.G. supp. to app. C, amend 603, commentary, "Reason for Amendment." The Commission saw the need to define aberrant behavior "more flexibly" and to "slightly relax" the "single act" rule. *Id.* Accordingly, spontaneity cannot be considered in connection with the requirement that aberrant behavior be of limited duration. Spontaneity of behavior and behavior of limited duration simply are not the same.

The district court noted that there was no dispute that there was but a single criminal occurrence and that Gonzalez' conduct "reflect[ed] a marked deviation from an otherwise law-abiding life." It also indicated that it would "entertain [the] prospect" of a downward departure for aberrant behavior if its determination was found to be in error. Accordingly, on remand the district court should exercise its discretion to determine whether this is "an extraordinary case" warranting departure for aberrant behavior, defined as a "single transaction" committed without significant planning and of limited duration, without

48

considering whether or not the behavior was spontaneous. In determining whether to depart, the court may consider Gonzalez' prior good works and employment record as well as the other factors described in the Application Notes to Section 5K2.20. We note that neither party contests the binding nature of the Policy Statement or of the Application Notes that are part of the Commentary under Section 5K2.20. *See United States v. Maria,* 186 F.3d 65, 69 n. 4 (2d Cir.1999).

## CONCLUSION

The sentence of the district court is vacated and the matter is remanded for resentencing proceedings, to be conducted in light of the foregoing.