10-4073-cr(L) 11-683-cr (Con)
United States v. Gowing and Scheringer

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 6th day of June, two thousand twelve.

PRESENT:
        RALPH K. WINTER,
        CHESTER J. STRAUB,
        GERARD E. LYNCH,
                *Circuit Judges.*

---

UNITED STATES OF AMERICA,
        *Appellee,*

            v.                                    Nos.    10-4073-cr (L)
                                                          11-683-cr (Con)

DELMER GOWING, EMIL SCHERINGER,
        *Defendants-Appellants*.

---

FOR APPELLANTS:        MARSHA R. TAUBENHAUS, New York, New York, *for* Delmer Gowing.

                       KIM P. BONSTROM, Bonstrom & Murphy, Shelter Island, New York, *for* Emil Scheringer.

FOR APPELLEES:             LEE RENZIN, Assistant United States Attorney (Brent S. Wible, Assistant United States Attorney, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York.

**UPON DUE CONSIDERATION**, it is hereby **ORDERED**, **ADJUDGED**, **AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendants-Appellants Delmer Gowing and Emil Scheringer were convicted by a jury in the United States District Court for the Southern District of New York (George B. Daniels, *J.*) principally for operating a years-long, multimillion-dollar fraudulent investment scheme in violation of the wire fraud statute, 18 U.S.C. § 1343, and the conspiracy statute, 18 U.S.C. § 1349. In addition, both defendants were also convicted of committing the charged crimes while on pre-trial release, in violation of 18 U.S.C. § 3147, and Scheringer was convicted of failing to appear, in violation of 18 U.S.C. § 3146. Gowing appeals his conviction and sentence; Scheringer appeals only his sentence. In a separate opinion filed along with this order, we address Gowing's argument that he was improperly sentenced to a consecutive term of imprisonment under 18 U.S.C. § 3147 for continuing to participate in the conspiracy after he was arrested and released on bail. This order addresses the defendants' remaining arguments: first, Gowing's argument that the district court erroneously admitted excerpts from the transcript of another proceeding; second, Gowing's challenge to the district court's calculation of loss attributable to him for sentencing purposes; and third, Scheringer's various challenges to the reasonableness of his sentence. We assume familiarity with the facts and history of this case, which are set out more extensively in our parallel opinion.

**DISCUSSION**

I. Admissibility of Transcript

In the only challenge either defendant makes to his conviction, Gowing argues that the district court erred by permitting the prosecution to read aloud to the jury portions of the transcript of a civil proceeding unrelated to this case. Assuming without deciding that Gowing did not affirmatively waive this argument, it was not error for the district court to admit the evidence.

Gowing was subject to a default judgment in a civil RICO case in the Northern District of Ohio arising out of a high-yield investment program. See generally Cline v. Gowing, No. 1:04-CV-00833, 2007 WL 978098 (N.D. Ohio March 29, 2007). After mediation, Gowing entered into a settlement agreement, but he failed to make the agreed-upon payments and was held in civil contempt of court. He was released only after representing to the court that he no longer believed that certain contracts were legitimate and expected no payment on them. Portions of Gowing's statements to the Ohio court were relevant to the instant case insofar as they shed light on Gowing's defense that he had relied in good faith on misrepresentations made to him by co-defendant Scheringer. Before trial, the district court in the instant case determined, in a ruling not challenged on appeal, that certain portions of the transcript would be admitted, and others excluded from evidence.

At trial, Gowing's attorney attempted to cross-examine a witness who had testified about the Ohio case. The prosecution argued that counsel's questions about the Ohio proceedings misled the jury and opened the door to admission of more of the transcript. Gowing's counsel did not object; rather he sought to include *more* of the transcript, including incriminating

3

references to Scheringer that had been redacted in accordance with United States v. Bruton, 391 U.S. 123 (1968). Gowing now argues that the transcript was so damaging that the district court in this case should not have allowed them in. He argues that the incredulity of the judge in the Ohio case, apparent from the transcript, effectively turned that judge into a witness against Gowing.

This argument is meritless. The district court had "broad discretion" to determine whether cross examination questions created a "false impression[]." United States v. Vasquez, 267 F.3d 79, 85 (2d Cir. 2001), quoting United States v. Diaz, 176 F.3d 52, 80 (2d Cir. 1999). The district court's determination that jurors would be misled without more of the transcript was not "arbitrary and irrational," United States v. Dhinsa, 243 F.3d 635, 649 (2d Cir. 2001), and thus not an abuse of discretion. By permitting jurors to hear more, the court allowed the jury – the proper judge of the facts – to decide whether Gowing's Ohio statements acknowledged only, as his counsel implied, that the single Yukos contract was not valid, leaving open the possibility that he had believed in good faith in the validity of Scheringer's other purported contracts. Thus, whether or not Gowing waived any objection to the admission of the additional excerpts, the district court's ruling was well within its discretion.

II. Gowing's sentence

Gowing next argues that the district court erred in calculating his guideline sentence range by finding a greater loss than was properly attributable to him. His argument is in two parts.

First, Gowing argues that the district court ignored part of the legal standard for loss. As Gowing notes, the loss calculation must be based on the amount which (1) was reasonably

4

foreseeable to the defendant and (2) falls within the scope of his agreement with his co-conspirators. United States v. Studley, 47 F.3d 569, 573-75 (2d Cir. 1995). Gowing argues that the district court focused only on what was reasonably foreseeable and ignored the "scope of [his] particular agreement with the conspirators." United States v. Garcia-Sanchez, 189 F.3d 1143, 1147 (9th Cir. 1999). But at the sentencing hearing, the district court expressly stated, "I think it is fairly clear that, from the evidence in this case, clearly from January 2004, Mr. Gowing . . . knew pretty much the details of the type of activity that Mr. Scheringer was involved in and that Mr. Gowing was agreeing to be involved in." Particularly given that at the hearing, Gowing contested how much loss was foreseeable to him, but not the scope of the agreement, the court's statement found that Gowing knowingly agreed to join the full scope of Scheringer's scheme. The losses attributed to him thus fell within the scope of that agreement.

Second, Gowing argues that the court erred in finding certain losses foreseeable to Gowing. Specifically, he argues that any amount of money collected by Jay Merkle and lost in the Scheringer scheme was not reasonably foreseeable to Gowing. The district court did not clearly err in finding to the contrary. At sentencing, the parties agreed that Gowing's deep involvement in the scheme began in early 2004. The district court was entitled to infer that, by the time Gowing met Merkle at Scheringer's residence in 2007, Gowing would have understood that someone spending a great deal of time in close contact with Scheringer and with access to Scheringer's computer must be involved in the scheme. On this basis, the court properly found the loss reasonably foreseeable. "In reviewing findings for clear error, we are not allowed to second-guess the trial court's choice between permissible competing inferences, because in that

5

case, the factfinder's choice cannot be clearly erroneous." Arch Ins. Co. v. Precision Stone, Inc., 584 F.3d 33, 39 (2d Cir. 2009) (internal quotation marks and citations omitted).

III. Scheringer's sentence

Finally, Scheringer challenges his forty-year sentence, a downward departure from the Guideline range of life imprisonment, in three ways. He argues that the district court based its sentence on its personal view of the charged crime, rather than a reasoned analysis; that the court gave flawed or incorrect weight to the need to protect the public from further crimes; and that the court misunderstood its authority to depart downward based on on Scheringer's alleged diminished capacity. All three arguments lack merit.

First, the district court's lengthy discussion at the sentencing of the severity of Scheringer's crimes was unremarkable given the huge losses sustained by investors and the scope and duration of the conspiracy. There is no evidence that the district court, which actually departed downward from the Guideline range, based its sentence on animosity of the type that the Third Circuit found impermissible in United States v. Olhovsky, 562 F.3d 530, 550-53 (3d Cir. 2009) (vacating a below-Guidelines sentence for possession of child pornography), the case on which Scheringer principally relies.

Second, the district court did not err by considering the need to protect the public in determining an appropriate sentence. To the contrary, Congress has expressly directed courts to consider this factor in imposing sentences. See 18 U.S.C. § 3553(a)(2)(C) (a sentencing court "shall consider . . . the need for the sentence imposed . . . to protect the public from further crimes of the defendant"). As the district court reasonably found, the fact that Scheringer

6

continued to conduct aspects of the scheme while incarcerated supported the conclusion that he would pose a significant future danger to the public.

Third, this Court may not review the district court's discretionary decision to depart downward; we may only vacate "when a sentencing court misapprehended the scope of its authority to depart or the sentence was otherwise illegal." United States v. Stinson, 465 F.3d 113, 114 (2d Cir. 2006). Here, Scheringer has not presented "clear evidence of a substantial risk that the judge misapprehended the scope" of his authority to depart downward based on diminished mental capacity. Id., quoting United States v. Gonzalez, 281 F.3d 38, 42 (2d Cir. 2002). The court declined to depart not because it misunderstood its authority, but because it found Scheringer's argument factually false. Because the court understood he scope of its authority, its discretionary decision is not reviewable. United States v. Valdez, 426 F.3d 178, 184 (2d Cir. 2005).

## CONCLUSION

We have considered all of the appellants' arguments and find them to be without merit. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

7